STATE ex rel. James Peter STECHER,
et al., Relators,

v.

Hon. James R. DOWD, Judge,
Circuit Court, St. Louis
City, Respondent.

No. 77802.

Supreme Court of Missouri,
En Banc.

Nov. 21, 1995.

As Modified Dec. 19, 1995.

Motion in Opposition to Revised Opinion
Denied Jan. 23, 1996.

Ray A. Gerritzen, St. Louis, for relators.

Michael Ward, Robert S. Rosenthal, Kenneth K. Schmitt, St. Louis, for respondent.

William L. Davis, Sherry A. Gutnick, St. Louis, for amicus, Missouri Organization of Defense Lawyers and Medical Defense Associates.

## ORIGINAL PROCEEDING IN PROHIBITION

LIMBAUGH, Judge.

Relator James Peter Stecher seeks a writ of prohibition against The Honorable James R. Dowd to prevent the enforcement of an order that Stecher execute certain medical and employment record authorizations for purposes of discovery. Stecher, the plaintiff in a medical malpractice suit, maintains that the medical authorizations, as drafted by defendants, are too broad and would allow discovery of information that is not relevant. Stecher also contends that Judge Dowd exceeded his authority with respect to the employment records by his order that under Stecher's interpretation, would allow defendants' attorneys to be present for an *in camera* inspection of the records. This Court issued a preliminary writ, which is now made absolute.

### I.

Stecher's medical malpractice suit was brought against St. Louis University and two doctors practicing at St. Louis University Medical Center. The suit is based on the alleged failure of the doctors to obtain Stecher's informed consent before using an experimental drug in a "double blind" study. Stecher claims to have suffered an allergic reaction to the drug Chimeric 7E3 Fab ("C7E3 Fab"). In his petition, Stecher alleged that he suffered the following:

cardiogenic shock and vascular collapse, due to anaphylaxis (severe allergic reaction), and ... will suffer severe pain of body and mind, including extensive bleeding, a hematoma on the neck, severe bruising, scars, an extensive amount of additional hospitalization, and a propensity to any future reaction of any medication or substance containing mouse antibodies....

Stecher further alleges that because of his exposure to C7E3 Fab, he runs the risk of the following:

development of antibodies against C7E3 Fab, which antibodies may cause severe allergic reactions, including breathing difficulty, lowering of blood pressure, skin rash, temporary fever and chills, rapid heart rate, or a decrese [sic] in platelet counts and bleeding, "Flushing" and moderate increases inheart [sic] rate, or allergic reaction to any medication from mouse antibodies at anytime in the future, as well as the drug's cancer-causing potential or effects on fertility; in addition ... an increased risk of hemorrhage in the event of surgery, which might require additional transfusions, and possible physical risks associated with blood transfusion which include an allergic reaction, fever, immune system reaction, or infection, including HIV (human immunodeficiency virus) or hepatitis....

During discovery, defendants submitted medical authorizations for Stecher to execute. Each of the forms had the following format and text:

### *MEDICAL RECORDS RELEASE*

DOCTOR: _____

DOCTOR: _____

DOCTOR: _____

HOSPITAL: _____

HOSPITAL: _____

HOSPITAL: _____

You are hereby authorized to permit the law firm of BROWN & JAMES, P.C., or their agent, to examine and/or copy all hospital, medical and dental records in your possession concerning my examina-

tion, treatment or confinement, said medical records to include, but not limited to, x-rays, CT scans, laboratory tests, nurses' notes, doctors' notes, consultations, admitting and discharge summaries, and bills. A copy of this authorization shall be sufficient to release medical records.

Stecher refused to sign the authorizations, contending that they were too broad. Defendants then filed a motion to compel. Respondent, Hon. James R. Dowd, sustained the motion and ordered Stecher to execute the authorizations.

Because Stecher claimed lost wages in his answers to defendants' interrogatories, defendants also requested that he sign authorizations regarding his employment records. Stecher objected to these authorizations as well, again arguing that they were overly broad. Upon defendants' motion, Judge Dowd ordered that Stecher execute employment authorizations that would direct the employers to appear in court with Stecher's employment file for an *in camera* inspection of the file. The order specified that both Stecher's attorney and the defendants' attorneys would be allowed to be present.

Stecher filed a petition for writ of prohibition in the Court of Appeals, Eastern District, seeking to prevent Judge Dowd from enforcing these orders, but the Court of Appeals denied the petition. Stecher then filed the petition with this Court, which granted a preliminary writ pursuant to Rules 84.22 to 84.24.

## II.

The first issue requires this Court's determination of the proper scope of medical authorizations in discovery proceedings. The general rule of discovery is that parties may obtain information regarding any matter relevant to the subject matter involved in the pending action so long as the matter is not privileged. Rule 56.01(b)(1). The term "relevant" is broadly defined to include material "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

■ Medical records are subject to the physician-patient testimonial privilege codified under § 491.060(5), RSMo1994. *Brandt*

*v. Pelican,* 856 S.W.2d 658, 661 (Mo. banc 1993). Under the statute, any information a physician may have acquired from a patient while attending the patient and which was necessary to enable the physician to provide treatment is considered privileged. However, this Court has held that once plaintiffs put the matter of their physical condition in issue under the pleadings, they waive the physician-patient privilege insofar as information from doctors or medical and hospital records bears on that issue. *State ex rel. McNutt v. Keet,* 432 S.W.2d 597, 601 (Mo. banc 1968). It must be emphasized that under this rule, defendants are not entitled to any and all medical records, but only those medical records that relate to the physical conditions at issue under the pleadings. It follows that medical authorizations must be tailored to the pleadings, and this can only be achieved on a case-by-case basis.

In this case, Stecher maintains that the only injury alleged is to his heart, and therefore the authorizations should be limited to records concerning his heart. Defendants, on the other hand, assert that Stecher's petition puts virtually his entire body into issue, and therefore the broad medical authorizations accurately reflect the scope of the injuries pleaded.

■ We agree that Stecher's pleaded injuries are not narrowly limited to his heart; instead, the allegations include risk of skin rash, cancer, adverse consequences regarding fertility, and potential exposure to HIV or hepatitis, to name but a few. However, broad allegations of injuries do not automatically entitle defendants to an essentially unlimited medical authorization. The *McNutt* case instructs that the trial court has the power to limit production of medical records "to those which reasonably relate to the injuries and aggravations claimed by the plaintiffs in the present suit." *Id.* at 602. As this Court explained, despite broad allegations of injury, "[t]he waiver ... does not mean that it automatically extends to every doctor or hospital record a party has had from birth regardless of the bearing or lack of bearing, as may be, on the matters in issue." *Id.*

■ While it is true that Stecher's allegations do not set precise limits on his physical complaints, it is equally true that defendants' medical authorizations set absolutely no limits at all. But for Stecher's name under the signature line, there is nothing in defendants' medical authorizations that would tie the authorizations to this particular case and the injuries pleaded. The absence of any time limits, designation of health care providers, or any other qualifications means that defendants' authorizations, as submitted, would entitle them to any and all of Stecher's medical records, from any provider who has ever treated Stecher for any reason from his birth to the present day. Despite Stecher's pleadings, the open-ended scope of defendants' authorizations is indefensibly broad.

Defendants argue that the authorizations are limited by the scope of Stecher's answers to the interrogatories, which reference Stecher's physical condition and medical history and which are limited to a ten-year period prior to the alleged malpractice. Furthermore, defendants note, the interrogatories used are pattern interrogatories approved by the Twenty–Second Judicial Circuit under Local Rule 32.2.2, and that the scope of permissible discovery is governed thereby. Despite these points, the medical authorizations themselves contain absolutely none of the limiting language that defendants included in their interrogatories. There is no mention in the authorizations of a time limit. There is no mention as to when or how the injuries occurred or of the nature of Stecher's complaints. There is no mention of specific health care providers. Although defendants contend in their brief that this is "normal practice," it is a practice that creates too great a risk that non-relevant and privileged information may be released to the defendants.

■ Prohibition is the proper remedy when a trial court issues an order in discovery proceedings that is an abuse of discretion. *State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 927–28 (Mo. banc 1992). Because the authorizations as drafted by defendants are overly broad and unlimited in scope, the trial court abused its discretion in ordering Stecher to sign them. Therefore, with respect to that portion of the order of the trial court, we make our preliminary writ of prohibition absolute.

## III.

■ We next turn to the issue of whether defendants' attorneys may be present at an *in camera* inspection of Stecher's employment records. The term *in camera* means "in chambers" or "in private," Black's Law Dictionary, 760 (6th ed. 1990), and proceedings that are *in camera* are designed to exclude persons who should not be privy to the information to be disclosed. The defendants do not dispute the necessity and propriety of an *in camera* inspection, the obvious purpose of which is to cull information that is not discoverable so to protect Stecher's privacy interests in his employment records. The protection cannot be achieved, of course, if counsel for defendants is present for the inspection. To the extent that the trial court's order may be read to permit the actual presence of counsel during the *in camera* inspection, as opposed to ordering counsel simply to be available or to stand by during *in camera* inspection, the order is improper and is hereby prohibited.

The preliminary writ of prohibition is made absolute as heretofore indicated.

HOLSTEIN, C.J., and BENTON, PRICE, ROBERTSON, COVINGTON, JJ., and SMART, Special Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.