STATE ex rel. Leila J. JONES, Relator,

v.

Hon. William L. SYLER, Judge, Circuit Court, Perry County, Respondent.

No. 78732.

Supreme Court of Missouri,
En Banc.

Jan. 21, 1997.

**806**

Ray A. Gerritzen, St. Louis, for Relator.

John L. Cook, Cape Girardeau, for Respondent.

ORIGINAL PROCEEDING IN PROHIBITION

PRICE, Judge.

Relator Leila Jones seeks a writ of prohibition against The Honorable William Syler to prevent enforcement of an Order compelling her to execute a medical authorization form. Jones, the plaintiff in a personal injury negligence suit, claims that the medical authorization would permit discovery of medical information that is irrelevant to the injuries alleged. Because the authorization was not limited in time and was not limited to specific health care providers, we make the preliminary writ of prohibition absolute.

## I.

Jones' personal injury suit arose out of the alleged negligence of her husband, Larry Jones, and his employer, Gilster Mary–Lee Corporation. In her petition, Jones alleged that her husband negligently left his tractor trailer in reverse gear, allowing it to roll backwards and pin her between the trailer's open door and another tractor trailer. Jones alleged that she suffered the following injuries:

[A] fracture of the distal head of the radius of the left wrist together with a severe wrench, sprain, and strain of her upper chest, left arm, and wrist, with distinct bruises on the upper left arm, both inside and out, and a large hematoma or lump on the dorsal surface of the left wrist, together with a bruise on her back and a bruising and contusing of the left side of her head, bruises and contusions on the upper back and the middle of the back towards the right side, and a bruise and knot on the upper right arm in the area of the deltoid, and Plaintiff's head, chest, both arms, left wrist and hand, and back, and the bones, joints, muscles, tendons, tissues, nerves, ligaments, vessels, cartilages, and skin thereof, were fractured, wrenched, sprained, strained, bruised, contused, swollen, inflamed, and made painful, and Plaintiff suffered, suffers, and will suffer severe pain of body and mind, including dizziness and nausea and has pain and weakness when lifting objects with her left hand; that said injuries and effects are serious and permanent, and functions and use of all the aforesaid parts and organs have been seriously and permanently impaired....

During discovery, defendants submitted a medical authorization for Jones to execute. The authorization read as follows:

I hereby authorize any hospital, physician or other person who has attended me or examined me to furnish to the law firm of THOMASSON, GILBERT, COOK, REMLEY & MAGUIRE, L.C. or its agents, any and all information with respect to any illness or injury, medical history, consultation, prescription, treatment, or diagnosis, and copies of all hospital or medical records, including x-rays, which

relate to any injury, disease, or medical condition concerning my head, arms, hands, upper body, entire back, bones, joints, muscles, tendons, tissues, nerves, ligaments, vessels, cartilages and skin or any injuries or conditions concerning my emotional or mental state. . . .

Jones refused to sign the authorization, contending that it was too broad. In its place, Jones executed her own medical authorizations which were addressed to the specific health care providers involved in the case. Furthermore, Jones' authorization contained an admonition to the health care providers:

You are advised to avoid ex parte discussions with [defense counsel] concerning any medical information that is not relevant to the injuries I sustained in the occurrence of September 11, 1994, and that if you discuss any medical information with [defense counsel] that is not relevant to said injuries, then I may maintain an action for damages in tort against you for breach of the patient/doctor privilege in Missouri.

On defendants' motion to compel, the trial court ordered Jones to execute the medical authorization provided to her by defense counsel.

Jones filed a petition for writ of prohibition with the Court of Appeals, Eastern District, on the grounds that the trial court exceeded its jurisdiction in compelling her to execute defendants' authorization because it was overly broad and because there was "no legal reason to exclude" the "ex parte admonition". The court of appeals denied the petition. Jones then filed the petition with this Court, which granted a preliminary writ pursuant to Rules 84.22 to 84.24.

## II.

For the most part, this controversy is controlled by *State ex rel. Stecher v. Dowd*, 912 S.W.2d 462 (Mo. banc 1995). In *Stecher*, this Court addressed three ways that medical authorizations can be overly broad: authorizations that are not tailored to the pleadings, authorizations that are not limited in time, and authorizations that are not addressed to specific health care providers. *Id.* at 464–65.

### A.

■ Medical records are subject to the physician-patient privilege codified under § 491.060(5), RSMo 1994. *Brandt v. Pelican*, 856 S.W.2d 658, 661 (Mo. banc 1993). Any information a physician acquires from a patient while attending the patient and which is necessary to enable the physician to provide treatment is privileged. *Stecher, supra*, at 464. Once plaintiffs put the matter of their physical condition in issue under the pleadings, they waive the physician-patient privilege insofar as information from doctors or medical and hospital records bears on that issue. *State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 601 (Mo. banc 1968).

■ In *Stecher*, we defined the proper scope of medical authorizations by stating:

[D]efendants are not entitled to any and all medical records, but *only those medical records that relate to the physical conditions at issue under the pleadings.* It follows that medical authorizations must be tailored to the pleadings, and this can only be achieved on a case-by-case basis.

*Stecher, supra*, at 464 (emphasis added). This rule is clear and in almost all cases should allow little room for controversy. If plaintiff has alleged an injury, defendant is entitled to "those medical records that relate to the physical conditions at issue *under the pleadings.*" *Id.* Unless special circumstances can be shown, the language of defendant's requested authorization should track plaintiff's allegation of injury in the petition. As with other discovery, the narrowness or breadth of the medical authorization required is directly controlled by the narrowness or breadth of the allegations in plaintiff's petition.

■ Here, defendants' authorization form is limitless. It seeks "any and all information ... with respect to ... bones, joints, muscles, tendons, tissues, nerves, ligaments,

vessels, cartilages and skin or any injuries or conditions concerning my emotional or mental state...." The authorization extends to plaintiff's entire body. Normally, this would be objectionable.

Jones' petition, however, is equally limitless. After alleging a fracture of the left wrist and a sprain of the upper chest, she then states "plaintiff suffered, suffers, and will suffer severe pain of the body and mind ... [and] that said injuries and effects are serious and permanent and functions and use of all the aforesaid parts and organs have been seriously and permanently impaired." Jones pled her case in a manner that alleges "pain of body and mind" past, present, and future.

Jones probably overpled her injuries in order not to be limited at trial. The defendants have proposed an equally overbroad authorization form to make certain that all possible information is obtained, even though much of it will have no relevance to this case. This style of practice merely adds undue expense and delay to the litigation process. In such a circumstance, however, sauce for the goose is sauce for the gander. Jones invited defendants' overbroad authorization by the language of her petition, and we are unwilling to find that the trial court abused its discretion solely on the issue of overbreadth.

Nevertheless, we note the folly of meaningless boilerplate language. Adversary counsel should work together to limit the issues at trial and eliminate unnecessary expense. If counsel are unwilling to take reasonable steps to avoid unreasonable controversy, trial courts should impose sanctions.

## B.

Although we do not find that the trial court abused its discretion solely on account of the way the injuries were pled and the breadth of the proposed authorization, *Stecher* also emphasized the importance of time limits and designations of health care providers on medical authorizations. We noted that because time limits and designations of health care providers "tie the authorizations to [the] particular case and the injuries pleaded", an authorization lacking them is improper because it "would entitle [defendants] to any and all of [plaintiff's] medical records, from any provider who has ever treated the plaintiff ... from his birth to the present day." *Stecher, supra,* at 465. Furthermore, we stated that, although it might be the "normal practice" for attorneys to draft blanket medical authorizations without time limits or designations of health care providers, "it is a practice that creates too great a risk that non-relevant and privileged information may be released to the defendants." *Id.*

Additionally, the court of appeals, in *State ex rel. Pierson v. Griffin,* 838 S.W.2d 490 (Mo.App.1992) and *State ex rel. DeGraffenreid v. Keet,* 619 S.W.2d 873 (Mo.App.1981), held that authorizations that are not addressed to any particular doctor, or "worldwide" authorizations, are overly broad. In *Pierson,* the authorization was addressed "TO:" followed by three blank lines, *Pierson, supra,* at 491, while in *DeGraffenied,* it was addressed "To Whom It May Concern". *DeGraffenreid, supra,* at 877.

■ In this case, the proposed medical authorization was addressed to "any hospital, physician or other person who has attended me or examined me". Furthermore, the authorization was not limited as to time. In these two respects, the authorization was overbroad.

## C.

■ Prohibition is the proper remedy when a trial court issues an order in discovery proceedings that is an abuse of discretion. *State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 927–28 (Mo. banc 1992). The trial court abused its discretion when it ordered plaintiff to sign a medical authorization that was not limited in time and that was not addressed to specific health care providers. *Stecher, supra,* at 465.

The preliminary writ of prohibition is made absolute.

### III.

Jones also contends that the "ex parte admonition" in the authorizations she offered was supported by the law of Missouri and that the trial judge abused his discretion in failing to require that the admonition be placed in the medical authorizations. Jones bases this contention on *Brandt v. Medical Defense Associates*, 856 S.W.2d 667 (Mo. banc 1993) (*Brandt II*). *Brandt II* stated that "physicians may be well advised to avoid ex parte discussions with the patient's adversaries absent a clear understanding as to what medical information is relevant to the patient's injuries then at issue." *Id.* at 675.

That statement in *Brandt II* was a general warning that physicians can be liable for the tort of breach of fiduciary duty of confidentiality if they disclose privileged information that does not fall under the waiver. The statement was not made to dictate the substance or form of medical authorizations. Nor was the statement made so that it would be included in medical authorization forms.

■ The decision of whether to engage in ex parte discussions with an attorney concerning medical information that is no longer subject to the physician-patient privilege belongs solely to the physician, not to plaintiff or defendant. *Brandt v. Pelican*, 856 S.W.2d 658, 663 (Mo. banc 1993) (*Brandt I*).

The trial court did not abuse its discretion in failing to require the inclusion of the "ex parte admonition" in the medical authorization.

### IV.

Finally, Jones invites this Court to revisit the issue of whether ex parte interviews between plaintiff's physician and defense counsel should be permitted. We decided this exact issue three years ago in *Brandt II*. In *Brandt II,* we discussed the many reasons why ex parte communications are allowed in Missouri. We will not interfere with the right of a health care provider to speak to whomever he or she chooses concerning information that is not subject to any privilege.

### V.

The preliminary writ of prohibition is made absolute.

HOLSTEIN, C.J., and BENTON, COVINGTON and WHITE, JJ., and FLANIGAN, Senior Judge, concur.

ROBERTSON, J., dissents in separate opinion filed.

LIMBAUGH, J., not sitting.

ROBERTSON, Judge, dissenting.

I respectfully dissent and would quash the preliminary writ in prohibition previously issued.

A review of our recent jurisprudence addressing matters relating to medical authorizations is sufficient evidence to reveal that this Court has done little to improve matters since *State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 601 (Mo. banc 1968). The majority says that the recently announced rule in *State ex rel. Stecher v. Dowd*, 912 S.W.2d 462, 464 (Mo. banc 1995)—that "only those medical records that relate to the physical conditions at issue under the pleadings" are discoverable by a defendant—is "clear and in almost all cases should allow little room for controversy." But the addition of time and provider limitations to the otherwise clear statement of the rule announced in *Keet* breeds uncertainty and provides an excuse for the protracted litigation over discovery that the majority counsels against. Thus, the majority's statement is more hopeful than factual, more self-congratulatory than helpful.

Pleadings in cases involving personal injury generally lay claim to devastation beginning at the ends of the hair coursing through every organ and musculo-skeletal system that connect the hair to the soles of the feet. Fact pleading requires such a listing in order to ensure the plaintiff that all injuries actually caused by the defendant's negligence are legally before the fact finder at trial.

Here, the plaintiff's pleadings are quite restrained. They claim injury only to the

plaintiff's arms, left wrist and hand, back, head, and chest and assert further that plaintiff suffered "severe pain of body and mind."

The defendants' authorization form is also quite restrained. I read the defendants' proposed form to be more limiting than does the majority, relating only to plaintiff's "head, arms, hands, upper body, [and] entire back ... or any injuries or conditions concerning [plaintiff's] emotional or mental state." These are the parts of the body plaintiff put at issue by filing her legal action. By filing that legal action, plaintiff waived her patient/physician privilege under *Keet*.

To this point the majority and I do not disagree. The authorization proposed by the defendants properly limits itself to the injuries claimed by the plaintiff.

But unlike the majority, I believe the waiver of the patient/physician privilege to which the plaintiff agreed by filing suit is complete as to the injuries claimed in the petition. I do not agree that the time and provider limitations to which *Stecher* refers are consistent with a discovery process designed to ferret out previous injuries or complaints of injuries to the body parts or systems that plaintiff claims a defendant's negligence caused. The opposite is true. And this is particularly so where the defendant seeks to learn whether a plaintiff suffered or claimed an injury of sufficient magnitude to require medical treatment of those same body parts or systems prior to the event that led the plaintiff to file suit against these defendants. Such information is highly relevant to the defendant's case—if not on the issue of negligence then certainly on the question of the extent of the defendant's contribution to the plaintiff's averred damages. That a fifty-year-old plaintiff had neo-natal surgery for a congenital defect of the spine, or fell from a bicycle on her tenth birthday and broke her arm, or had a tattoo removed from her upper chest by a dermatologist, or frequently visited a chiropractor for treatment of an aching back for a decade that ended ten years before the accident at issue occurred, or consulted with a psychiatrist for constant pain at some point in her past are all highly relevant facts that a defendant is entitled to discover when a plaintiff puts arm and back injuries or chest-scarring or severe pain of the mind at issue in a lawsuit.

The rule I prefer is admittedly harsh. But it has limits. Its limits are those that plaintiff places on the defendant by the pleadings filed. I would hold that the waiver of the patient/physician privilege is complete as to the parts and systems of the body for which injury is claimed. I would no longer recognize any limitations as to time or provider as to those injuries the plaintiff puts at issue.

Of course, I join in the majority's hope that adversary counsel might to be able to work out disputes over the scope of discovery. And while I suspect that such agreements are fairly commonplace, we do not see them here. We see the cases in which positions have hardened, where compromise is no longer attempted and when the courts must dry the spittle from the legal papers before restoring order. In those cases, we have done little to bring peace with our attempts to fashion rules. Indeed, I fear that our efforts to date have only encouraged and provided an excuse for those who are inclined to fight about everything, to join the battle over discovery.

I concur in the remainder of the majority opinion but, for the reasons expressed, would quash the writ.