**STATE of Missouri ex rel. Kimberly
K. BROWN, Relator,**

v.

**The Honorable Mary DICKERSON,
Judge of the Circuit Court of
Morgan County, Respondent.**

**No. WD 63803.**

Missouri Court of Appeals,
Western District.

June 22, 2004.

James G. Krispin, Clayton, MO, E. Rex Bradley, Louisiana, MO, for relator.

Michael A. Carter and Ronald K. Carpenter, Camdenton, MO, for respondent.

Before HOWARD, P.J., and SMART and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Relator Kimberly K. Brown (Brown) seeks a writ of prohibition against the Honorable Mary Dickerson (Respondent) to prevent enforcement of Respondent's order that Brown answer certain interrogatories. Brown, the plaintiff in a premises liability and negligence action, maintains that the interrogatories, as drafted by the defendant, require her to provide privileged information and are overly broad and vague. This court issued a preliminary writ, which is now, in part, made absolute.

## Procedural Background

Brown filed suit against Merilyn Vandervort Investments, L.L.C., d/b/a Jeremiah's (Defendant) for injuries she sustained on July 15, 2001, when she fell in a parking lot of property located at 1213 Bittersweet Road in Lake Ozark, Missouri, which property was owned and operated, and in the possession and control of Defendant.[1] In her amended petition, Brown alleged that Defendant was liable under premises liability and negligence per se theories for injuries she sustained when she fell from the upper level to the lower level of Defendant's parking lot, which drop-off was not barricaded or guarded and was poorly lit. Brown alleged under each theory that

As a direct and proximate result of the above-referenced fall, [she] sustained injuries including open fracture of the vault of the skull and intra cranial hemorrhage, loss of consciousness, subdural hematoma and neck injury, all of which have caused her great pain and suffering in the past and will in the future continue to cause her pain and suffering. Further, [she] has incurred medical expenses to date in excess [of] $52,000 and will incur further medical expenses in the future, the total of which at this time are unknown. In addition, as a direct and proximate result of the injuries sustained in this occurrence, plaintiff has also suffered diminished earning capacity and lost wages, the total of which at this time are unknown.

On January 20, 2004, Defendant filed its "First Request for Interrogatories" directed to Brown. Three days later, Brown filed her objections to the request for Interrogatories, in which she specifically objected to Interrogatories No. 5, 6, 7, 11(d), 12, 13, 17, 20, 21, and 23.

On February 9, 2004, after hearing argument on the objections, Respondent entered her ruling which overruled Brown's objections to Interrogatories No. 7, 12, and 13—the interrogatories at issue in this writ proceeding. Respondent granted Brown twenty days to answer those interrogatories.

On February 18, 2004, Brown filed her Petition for Writ of Prohibition with this court, seeking an order commanding Respondent to refrain from enforcing her ruling of February 9, 2004, and from taking any further action on Interrogatories No. 7, 12, and 13. This court granted a preliminary writ.

## The Interrogatories

The interrogatories in dispute and Brown's answers or objections thereto, which were overruled by Respondent, are as follows:

7. During the past five (5) years immediately before the occurrence mentioned in the Petition, had Plaintiff purchased or used any medicine distributed by any pharmacy or entity selling pharmaceutical supplies, and for each list:

(a) The name and address of each pharmacy or entity selling pharmaceutical supplies;

(b) The drug or medicine prescribed[.]

**ANSWER:** Objection—overbroad, irrelevant and immaterial, beyond the scope of admissible discovery and not reasonably calculated to lead to the discovery

---

1. The record indicates that suit was initially filed in Miller County, Missouri, and was subsequently transferred to Morgan County, Missouri. "7–Mile Investments, Inc., d/b/a Horn'y Toad Bar and Grill" was also named as a defendant in Brown's petition, but, pursuant to Rule 67.02, she voluntarily dismissed the claims against that defendant on December 15, 2003, leaving Merilyn Vandervort Investments, L.L.C., d/b/a Jeremiah's as the only defendant.

of admissible evidence. Calls for privileged information.

12. Have you ever been involved in any accidents either prior to or subsequent to the incident referred to in the Petition? If so, state:

(a) The date, place, type of accident and names and addresses of other parties involved.

(b) A detailed description of injuries you received.

(c) Names and addresses of all physicians, osteopathic physicians, surgeons, chiropractors, or other medical practitioners rendering treatment.

(d) Names and addresses of all hospitals rendering treatment.

(e) The nature and extent of recovery and if any permanent disability was suffered, the nature and extent of permanent disability.

(f) If any doctor or hospital submitted medical reports showing your injuries, treatment, condition or prognosis, either to you or your attorney or to any of your representatives, please attach copy of said reports to your Answers.

(g) If you were compensated in any manner for such injuries, state the names and addresses of each and every person or organization paying such compensation and the amount thereof.

*ANSWER:* Objection, overbroad, and calls for information which is immaterial, irrelevant and beyond the scope of permissible discovery. Further, calls for privileged information and work product.

13. Have you ever had any serious illness, sickness or disease, any surgical operations or been hospitalized either prior to or subsequent to the incident referred to in your Petition? If so, state:

(a) The date and place.

(b) A detailed description of your symptoms.

(c) The names and addresses of any hospitals treating you.

(d) The names and addresses of all physicians, osteopathic physicians, surgeons, chiropractors or medical practitioners rendering treatment.

(e) The approximate date of your recovery.

(f) If you did not fully recover, the date your condition became stationary, and a description of your condition at that time.

*ANSWER:* Objection—overbroad, vague, calls for information which is immaterial, irrelevant and beyond the scope of permissible discovery. Further, calls for information which is privileged and may call for narrative.

### Discussion

Brown argues that Respondent exceeded her authority and jurisdiction by requiring her to answer these interrogatories. Prohibition is the appropriate remedy to prevent the abuse of a trial court's discretion in discovery proceedings. *State ex rel. Stecher v. Dowd,* 912 S.W.2d 462, 465 (Mo. banc 1995) (*"Stecher"*). As explained below, we agree that the trial court abused its discretion as to Interrogatories No. 12 and 13.

Rule 56.01(a)[2] authorizes written interrogatories as a method of discovery. Rule

---

**2.** Unless otherwise noted, Rule references are to the Missouri Rules of Civil Procedure (2004).

57.01(c), which governs the permissible scope of interrogatories, provides in relevant part that "[i]nterrogatories may relate to any matters which can be inquired into under Rule 56.01[.]" Rule 56.01(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action." "The term 'relevant' is broadly defined to include material '*reasonably* calculated to lead to the discovery of admissible evidence.'" *Stecher*, 912 S.W.2d at 464 (citing Rule 56.01(b)(1) (1995)[3]) (emphasis added).

The issue now before us requires our determination of the proper scope of interrogatories seeking health and medical information in discovery proceedings. It is analogous to the issue of the proper scope of medical authorizations in discovery proceedings as determined by our supreme court in *Stecher*.

In that case, Stecher filed a medical malpractice suit against the defendants "based on the alleged failure of the doctors to obtain [his] informed consent before using an experimental drug in a 'double blind' study." *Id.* at 463. Stecher alleged in his petition that he suffered an allergic reaction to the drug Chimeric 7E3 Fab, which caused him to suffer:

"cardiogenic shock and vascular collapse, due to anaphylaxis (severe allergic reaction), and ... will suffer severe pain of body and mind, including extensive bleeding, a hematoma on the neck, severe bruising, scars, an extensive amount of additional hospitalization, and a propensity to any future reaction of any medication or substance containing mouse antibodies...."

*Id.* In addition, Stecher alleged that his exposure to the drug resulted in the risk of:

"development of antibodies against C7E3 Fab, which antibodies may cause severe allergic reactions, including breathing difficulty, lowering of blood pressure, skin rash, temporary fever and chills, rapid heart rate, or a decrease [sic] in platelet counts and bleeding, 'Flushing' and moderate increases in heart [sic] rate, or allergic reaction to any medication from mouse antibodies at anytime in the future, as well as the drug's cancer-causing potential or effects on fertility; in addition ... an increased risk of hemorrhage in the event of surgery, which might require additional transfusions, and possible physical risks associated with blood transfusion which include an allergic reaction, fever, immune system reaction, or infection, including HIV (human immunodeficiency virus) or hepatitis...."

*Id.* At issue was the propriety of the following medical authorization forms that the respondent judge ordered Stecher to sign:

MEDICAL RECORDS RELEASE

DOCTOR: _____

DOCTOR: _____

DOCTOR: _____

HOSPITAL: _____

HOSPITAL: _____

HOSPITAL: _____

You are hereby authorized to permit the law firm of BROWN & JAMES, P.C., or their agent, to examine and/or copy all hospital, medical and dental records in your possession concerning my examination, treatment or confinement,

**3.** Amendments to Rule 56.01 since 1995 have no substantive effect on the issue now before us. The subsections cited and relied upon in *Stecher* remain unchanged in the current form of the Rule.

said medical records to include, but not limited to, x-rays, CT scans, laboratory tests, nurses' notes, doctors' notes, consultations, admitting and discharge summaries, and bills. A copy of this authorization shall be sufficient to release medical records.

*Id.* at 463–64. Stecher argued that the medical authorizations were too broad under the permissible scope of discovery set forth in Rule 56.01 because "the only injury alleged [was] to his heart, and therefore the authorizations should [have been] limited to records concerning his heart." *Id.* at 464. The Missouri Supreme Court agreed with the defendants that Stecher had pleaded injuries that were "not narrowly limited to his heart; instead, the allegations include risk of skin rash, cancer, adverse consequences regarding fertility, and potential exposure to HIV or hepatitis, to name but a few." *Id.* "However," the court continued,

> broad allegations of injuries do not automatically entitle defendants to an essentially unlimited medical authorization. The [*State ex rel.*] *McNutt* [*v. Keet,* 432 S.W.2d 597, 601, 602 (Mo. banc 1968)] case instructs that the trial court has the power to limit production of medical records "to those which reasonably relate to the injuries and aggravations claimed by the plaintiffs in the present suit." *Id.* ... [D]espite broad allegations of injury, "[t]he [plaintiff's] waiver [of the physician-patient testimonial privilege codified under § 491.060(5) once the plaintiff puts the matter of his or her physical condition in issue under the pleadings, insomuch as information from doctors or medical and hospital records bears on that issue,] ... does not mean that it automatically extends to every doctor or hospital record a party has had from birth regardless of the bearing or lack of bearing, as may be, on the matters in issue." *Id.*

*Id.* The medical authorizations at issue lacked anything "that would tie the authorizations to [the] particular case and the injuries pleaded." *Id.* at 465. The authorizations did not include "any time limits, designation of health care providers, or any other qualifications," so they "would entitle [the defendants] to any and all of Stecher's medical records, from any provider who has ever treated Stecher for any reason from his birth to the present day." *Id.* The court concluded that "[d]espite Stecher's pleadings, the open-ended scope of defendants' authorizations [was] indefensibly broad"; the defendants' " 'normal practice' " of requesting medical authorizations with "absolutely no limits at all" was "a practice that create[d] too great a risk that non-relevant and privileged information may be released to the defendants." *Id.*

■ We first turn our attention to Interrogatories No. 12 and 13; Interrogatory No. 7 will be discussed separately. There is no persuasive reason why the court's rationale in *Stecher* should not apply to Interrogatories No. 12 and 13. Although this case involves interrogatories rather than medical authorizations, the information sought by both could ultimately be the same. An overly broad medical authorization requires a plaintiff to provide the net to be used to cast about in an unlimited sea of medical information, while an overly broad interrogatory requires the plaintiff himself or herself to bring the information ashore and hand it over.

■ The production of medical records is subject to the physician-patient privilege codified under section 491.060(5), RSMo 2000. This privilege allows a patient to obtain complete and appropriate medical treatment "by encouraging candid communication between the patient and the physician, free of fear of the possible

embarrassment and invasion of privacy engendered by an unauthorized disclosure of information." *State ex rel. Maloney v. Allen*, 26 S.W.3d 244, 247 (Mo.App. W.D. 2000). It makes little sense to allow a party to dismantle this privilege with an overly broad interrogatory. More to the point, overly invasive interrogatories erode the fundamental right to privacy in an individual's medical affairs and present an undue risk of requiring the disclosure of irrelevant information. Plaintiff's allegations of injury did not automatically waive this important right regarding the entirety of her medical history from birth to present.

Defendant will not be permitted to discover, by interrogatory, medical information that it is prohibited from obtaining through an overly broad medical authorization. The same great risk regarding overly broad medical authorizations, as recognized in *Stecher*, exists with these open-ended interrogatories. In other words, just as a medical authorization permitted under Rule 56.01 must be limited in time and tailored to the physical conditions at issue under the pleadings on a case-by-case basis, so, too, must interrogatories. Defendant's virtually limitless requests in Interrogatories No. 12 and 13 fail in this regard.

■ Regarding Interrogatory No. 7, we decline to grant relief. By doing so, we do not put a general "stamp of approval" on its language. Every case is different, and, because of its superior knowledge of the case, the trial court's discretionary powers are generally decisive in discovery disputes. Only where the relator demonstrates an abuse of that discretion will the extraordinary remedy of prohibition apply. We find this heavy burden was not met with regard to Interrogatory No. 7.

## Conclusion

Interrogatories No. 12 and 13 are not properly limited in time and tailored to the physical conditions alleged by Brown in her petition. Because Interrogatories No. 12 and 13 are overly broad and unlimited in scope, the trial court abused its discretion in ordering Brown to answer those particular interrogatories. Therefore, with respect to Interrogatories No. 12 and 13, we make our preliminary writ of prohibition absolute. In all other respects, the preliminary writ is quashed.

SMART and NEWTON, JJ., concur.

