STATE of Missouri EX REL. Laura WILLIAMS, Relator,

v.

The Honorable David R. MUNTON, Twenty-Eighth Judicial Circuit, Barton County, Missouri, Respondent.

No. SD 34990

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: October 31, 2017

Attorney for Relator—Steven J. Blair of Springfield, MO.

Attorneys for Respondent—Chris Turney and Kristen M. Wagner of Kansas City, MO, and Mark E. Meyer of Lees Summit, MO.

Nancy Steffen Rahmeyer, P.J.

This petition for a writ of prohibition/mandamus arises in a suit by Laura Williams ("Plaintiff") against Cannonball Engineering, LLC ("Defendant Cannonball") and Carol Eldred ("Defendant Eldred") for the wrongful death of Jacob Dale Williams ("Decedent"). The issue in dispute is whether the trial court erred in granting Defendant Cannonball's motion to compel authorizations for Decedent's "prescription medications records" for the almost six-year period before his death.

In Plaintiff's petition for wrongful death filed in May 2016, Plaintiff alleged the following facts. Plaintiff and Decedent were married, and Decedent "owned and operated" "an auto repair shop." Defendant Eldred asked Decedent to repair the dump/bale bed on Defendant Eldred's truck. The dump/bale bed was "designed, manufactured, marketed and installed" by Defendant Cannonball. On December 1, 2015, Decedent was killed while working on the dump/bale bed on Defendant Eldred's truck. While the bed was "partially raised," Decedent "leaned in underneath" the bed, "touched the interlock switch," and was killed when the bed fell on him.

Count I of the petition for wrongful death pled a cause of action against Defendant Cannonball for strict products liability alleging in part that the bed (1) "was used in a manner reasonably anticipated and expected by Defendant Cannonball," and (2) "was defective and unreasonably dangerous." Plaintiff further pled that "[a]s a direct and proximate result" of the "unreasonably dangerous conditions" of the bed, the bed fell on Decedent causing Decedent "great physical pain and anguish" and death. Plaintiff further claimed that, as a direct and proximate result of Decedent's death, she "has suffered, and will in the future suffer, pecuniary loss and, in addition, has been and will in the future be deprived of decedent'[s] services, support, companionship, comfort, maintenance, instruction, guidance, counsel, love and affection."

Count II of the petition for wrongful death pled a cause of action against Defendant Cannonball for negligent failure to warn additionally alleging in part that Defendant Cannonball (1) knew or should have known that the bed "was in an unreasonably dangerous condition," (2) "had no reason to believe ... [D]ecedent would realize the ... bed was in an unreasonably dangerous condition," and (3) negligently "failed to adequately warn of such danger-

ous condition(s)." For damages under this theory, Plaintiff claimed the same causation and damages claimed in Count I.

Count III of the petition for wrongful death pled a cause of action against Defendant Cannonball for "strict liability—failure to warn" additionally alleging in part that the bed (1) was "unreasonably dangerous when put to its reasonably anticipated use," and (2) "was used exclusively for the farming applications for which it was designed." For damages under this theory, Plaintiff claimed the same causation and damages claimed in Count I.

Count IV of the petition for wrongful death pled a cause of action against Defendant Cannonball for negligence additionally alleging in part that "Defendant Cannonball was negligent in failing to use ordinary care in the design, manufacture, assembly, inspection, marketing and/or sale" of the bed. For damages under this theory, Plaintiff claimed that Decedent died "[a]s a direct and proximate result" of Defendant Cannonball's negligence, and claimed the same damages claimed in Count I.

Count V of the petition for wrongful death pled a cause of action against Defendant Eldred for negligence alleging that Defendant Eldred was negligent in multiple ways relating to the use and maintenance of the bed, and the presentation of the bed for repair. For damages under this theory, Plaintiff claimed that Decedent died "[a]s a direct and proximate result" of Defendant Eldred's negligence, and claimed the same damages claimed in Count I.[1]

At the county coroner's request, two postmortem blood samples collected from Decedent at 1:00 p.m., on the date of his death, were tested and found to contain reportable amounts of (1) dihydrocodeine/hydrocodol, (2) hydrocodone, and (3) hydromorphone. These test results were contained in a toxicology report issued December 10, 2015.

After the suit for Decedent's wrongful death commenced, Defendant Cannonball requested that Plaintiff "produce a valid, executed authorization(s) for [Decedent's] prescription medications records for the years 2010 to present." Plaintiff objected to this request because the request is "excessively broad, vague, ambiguous, burdensome and harassing, is not limited to the scope of plaintiff's pleadings, is not properly limited in time and/or subject matter, and seeks information not relevant to the instant case, nor reasonably calculated to lead to the discovery of admissible evidence. Further, said request violates the decedent's physician/patient privilege."

Following Defendant Cannonball's filing of a motion to compel compliance with its request, a hearing on the motion, and the trial court's consideration of written argument, the trial court granted Defendant Cannonball's motion to compel compliance with the request in a written order filed May 22, 2017. Plaintiff subsequently initiated this writ proceeding requesting that we issue a writ of prohibition or mandamus directing the trial court to vacate its order granting Defendant Cannonball's motion to compel compliance with the request. We issued a preliminary writ prohibiting the trial court from enforcing the challenged order or otherwise compelling Plaintiff to provide the requested authorizations, and now make that preliminary writ permanent.

### Standard of Review

As we recently stated:

---

**1.** In Defendant Cannonball's answer, Defendant Cannonball asserted the defenses of comparative fault and assumption of the risk.

Rule 56.01(b)(1) provides that "[p]arties may obtain discovery regarding any matter, *not privileged*, that is relevant to the subject matter involved in the pending action[.]" (Emphasis added.) Medical records are subject to the physician-patient privilege, as codified under section 491.060(5). *Brandt v. Pelican*, 856 S.W.2d 658, 661 (Mo. banc 1993). Any information a physician acquires from a patient while attending the patient and which is necessary to enable the physician to provide treatment is privileged. *State ex rel. Stecher v. Dowd*, 912 S.W.2d 462, 464 (Mo. banc 1995).

A trial court has broad discretion in administering the rules of discovery, and an appellate court should not disturb the trial court's rulings absent an abuse of discretion. *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608, 610 (Mo. banc 2007). However, a writ of prohibition is appropriate when a party has been directed to produce material that is privileged. *State ex rel. Boone Ret. Ctr., Inc. v. Hamilton*, 946 S.W.2d 740, 741 (Mo. banc 1997). Writ relief is appropriate because the damage to the party against whom discovery is sought is irreparable; once the privileged material is produced, there is no way to undo the disclosure on appeal. *Id.*

*State ex rel. Phillips v. Hackett*, 469 S.W.3d 506, 508 (Mo.App. S.D. 2015). Further, the physician-patient privilege:

> may, of course, be waived by the patient, and the general rule in regard to litigation is that "once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under [section] 491.060(5) so far as information from doctors or medical and hospital records bearing on that issue is concerned."

*State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 601 (Mo. banc 1968).

Ford does not contend that Relator's psychological condition is at issue under the pleadings—whether as to causation, damages, or otherwise. Rather, Ford seeks to discover statements made by Relator, in the context of psychological treatment, that could possibly be relevant to a theory of causation wholly unrelated to Relator's psychological condition. In the absence of a claim that Relator's psychological condition was a factor in either causing the accident or contributing to her physical injuries, the privileged material is not discoverable. Rule 56.01(b)(1); *see also [State ex rel. BNSF Ry. Co. v.] Neill*, 356 S.W.3d [169,] 175 [(Mo. banc 2011)].

*Id.* at 511-12.[2] If the patient waives the physician-patient privilege, the scope of discovery relating to the information for which the privilege was waived is subject to the trial court's discretion and the trial court's determinations on the scope of discovery are reviewed for an abuse of discretion. *See State ex rel. Jones v. Syler*, 936 S.W.2d 805, 807-08 (Mo. banc 1997) (scope of medical authorization reviewed for abuse of discretion); and *State ex rel. Stecher v. Dowd*, 912 S.W.2d 462, 464-65 (Mo. banc 1995) (scope of medical authorizations reviewed for abuse of discretion).

### Analysis

In her pleadings, Plaintiff alleged that, "[a]s a direct and proximate result" of the "unreasonably dangerous conditions" of the bed, or Defendant Cannonball's negligence, or Defendant Eldred's negligence, Decedent was killed and Plaintiff was damaged including future "pecuniary loss," and future loss of Decedent's "services, support, companionship, com-

---

**2.** Ford's contention was that "Relator's psychological records may reflect statements by Relator regarding whether she was wearing a seatbelt." *Id.* at 511.

fort, maintenance, instruction, guidance, counsel, love and affection." We believe these allegations place Decedent's cognitive function at the time the bed fell on him at issue on causation, and waive Decedent's physician-patient privilege with respect to records that bear on this issue at or near the time of the event. Based on the result of testing the post-mortem blood samples, Defendant Cannonball, in good faith, believes Decedent may have been cognitively impaired at or near the event and seeks discovery of Decedent's prescription medications records for 2010 forward. We believe Defendant Cannonball is entitled to discover Decedent's prescription medications records at or near the event, but believe the trial court abused its discretion in requiring that Plaintiff execute authorizations that authorize disclosure of almost six years of prescription medications records based on Defendant Cannonball's belief that Decedent was cognitively impaired at or near the event in which Decedent was killed.

Our preliminary writ of prohibition is made permanent.

Daniel E. Scott, J.—Concurs in Part and Dissents in Part in Separate Opinion

William W. Francis, Jr., J.—Concurs

DANIEL E. SCOTT, concurring in part and dissenting in part.

I concur and join in the court's conclusion that Defendant Cannonball is entitled to discover Decedent's prescription records for an appropriate time period.

I also doubt that Cannonball initially needs five years of pre-accident records. Had I been trial judge, I might have started with one year's worth, but that difference of opinion does not merit a writ in my view. For that reason alone, I would not make our writ permanent and respectfully

dissent from that portion of the court's opinion.