STATE EX REL. Ronald FENNE-
WALD, as Brother of Thomas Fenne-
wald, Deceased, Relator,

v.

The Honorable Patricia S.
JOYCE, Respondent.

No. SC 96219

Supreme Court of Missouri,
en banc.

Opinion issued November 21, 2017

Fennewald was represented by Mark. T. McCloskey and Patricia N. McCloskey of McCloskey PC in St. Louis, (314) 721-4000.

The medical providers were represented by Scott R. Pool and Michael J. Henderson of Gibbs, Pool and Turner PC in Jefferson City, (573) 636-2614.

PER CURIAM

The scope of medical authorizations has long been fertile ground for discovery disputes. But it need not be so. In *State ex rel. Stecher v. Dowd*, 912 S.W.2d 462, 464 (Mo. banc 1995), and *State ex rel. Jones v. Syler*, 936 S.W.2d 805, 807 (Mo. banc 1997), this Court established the reasonable boundaries and process for such discovery—"medical authorizations must be tailored to the pleadings, and this can only be achieved on a case-by-case basis." In this case, as in all cases, medical authorizations require a tailored "case-by-case" analysis by the parties and, if necessary, the circuit court, in accordance with *Stecher* and *Syler*. This was not done. As such, the preliminary writ of prohibition is made permanent.

## I.

In January 2016, Thomas Fennewald died allegedly, from metastatic colon cancer. In the subsequent wrongful death action filed against Jefferson City Medical Group, P.C., Thomas W. Schneider, M.D., and Christopher Case, M.D. ("Defendants"), Fennewald's surviving brother alleged failure to: inform of the need for or to prescribe a colonoscopy; perform or properly perform physical examinations; timely detect signs and symptoms of colon cancer and distal metastasis; and refer Fennewald to appropriate diagnostic specialties. For damages, the petition alleged: the development of preventable colon cancer; distal metastatic disease; pain, anguish, disfigurement, and disability; loss of earnings and earning capacity; cost of medical care; loss of enjoyment of life; emotion distress, fear, and terror; the pain of death; funeral costs and expenses; and all damages available under the Missouri Wrongful Death Act.

In the course of discovery, Defendants sought an order from the circuit court authorizing the release of Fennewald's medical records. After briefing and a hearing, the circuit court signed an "Order Authorizing the Release of Medical Records" in January 2017. This medical authorization order recited Fennewald's death and stated his "medical care and treatment, including various physical conditions prior to and at the time of his death [,] have been called into issue." The circuit court concluded:

Mr. Fennewald's medical records, protected by the physician-patient relationship or other pertinent privilege, from August 1, 1987, to present relating to medically significant injury or illness suffered by Mr. Fennewald during said time that is called into issue by the allegations set forth in Plaintiff's wrongful death action (including, but not limited to: Mr. Fennewald's colon cancer; Mr. Fennewald's history of and treatment for Hodgkin's lymphoma and other forms of cancer; Mr. Fennewald's comorbidities and medical history; Mr. Fennewald's conversations with other

doctors about cancer screening; discussion prior to his treatment with Defendants that any providers had regarding the need for, prescription for, or recommendation for a colonoscopy or other screening tests based upon Mr. Fennewald's age, medical history, family history, and published guidelines) should be released upon request. . . .

The medical authorization order further commanded "that any health care provider, employer, or other entity possessing records" of Fennewald

is hereby ordered, upon production or receipt of this Order [to] disclose said protected records and/or medical information in any form (including oral, written and electronic) dating from August 1, 1987, to present . . ., including but not limited to, the following:

- All medical records, including, but not limited to: inpatient, outpatient & emergency room treatment; all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, office and doctors handwritten notes: and records received from other physicians or health care providers;

- All autopsy, laboratory, histology, cytology, pathology, radiology, CT scan, MRI, echocardiogram & cardiac catheterization reports;

- All radiology films, mammograms, myelograms, CT scans, MRI, photographs, bone scans, pathology, cytology, histology, autopsy, immune-histo-chemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos;

- All pharmacy prescription records, including, but not limited to: NDC numbers and drug information handouts/monographs;

- All billing records, including, but not limited to: all statements, itemized bills and insurance records; and

- All documents related to amendment of any record request. . . .

The circuit court's medical authorization order additionally required the disclosure of "any and all records, data, notes, reports, and/or any other documents and information relating to substance abuse (alcohol/drug), mental health (includes psychological testing), and HIV-related information (AIDS related testing)." The brother petitioned for this writ, seeking to rescind, revoke, or withdraw the circuit court's medical authorization order or, in the alternative, to prohibit its use to obtain Fennewald's unlimited medical records.

## II.

■ Medical records are generally subject to a physician-patient privilege. *See* section 491.060(5), RSMo 2000. Once plaintiffs put "the matter of their physical condition in issue under the pleadings," however, "they waive the physician-patient privilege." *Syler*, 936 S.W.2d at 807. But the waiver is not general as to all medical records. Instead, it is only "insofar as information from doctors or medical and hospital records bears on that issue." *Id.* The rule for the proper scope of medical authorizations is that "defendants are not entitled to any and all medical records, but *only those medical records that relate to the physical conditions at issue under the pleadings.*" *Id.* (quoting *Stecher*, 912 S.W.2d at 464) (emphasis in original and alteration omitted).

■ Not only is the scope of permissible medical authorizations defined by this Court, but so is the process of determining the records to be produced. Because the waiver of the physician-patient privilege is only as to the records that relate to the

physical conditions at issue under the pleadings, "It follows that medical authorizations *must be tailored* to the pleadings, and this can only be achieved *on a case-by-case basis.*" *Id.* (emphasis added). The principles of *Stecher* and *Syler*, therefore, require a case-by-case review of the medical authorization designed to tailor the requests to the pleadings.

"Unless special circumstances can be shown, the language of defendant's requested authorization should track plaintiff's allegation of injury in the petition." *Id.* Here, the circuit court's medical authorization order initially attempts to track the allegations of injury in the petition (e.g., "Mr. Fennewald's colon cancer; Mr. Fennewald's history of and treatment for Hodgkin's lymphoma and other forms of cancer"). But the medical authorization order expands beyond the physical conditions at issue in this matter and is not "tailored to the pleadings." It is, as this Court found in *Syler*, "limitless," *see id.*, commanding, in part, the disclosure of "All medical records;" "All autopsy [and] laboratory" records; "All radiology films, CT scans, MRI, [and] photographs;" "All pharmacy prescription records;" and "All billing records."

Moreover, *Syler* instructs that medical authorizations are overbroad if they are "not addressed to any particular doctor," and, as such, are "'world-wide'" authorizations. *Id.* at 808. "[B]lanket medical authorizations without ... designations of health care providers ... 'create[ ] too great a risk that non-relevant and privileged information may be released to the defendants.'" *Id.* (quoting *Stecher*, 912 S.W.2d at 465). Here, the medical authorization order is addressed to "any health care provider, employer, or other entity possessing records" of Fennewald. Case-law demands a more exacting process, as well as tailored scope, for medical authorizations.

## III.

The medical authorization order in this case is of the variety prohibited by this Court's precedent. Compliance with the proper scope and process will take more specific work and precision in drafting medical authorizations by the parties, and if necessary, the circuit court. For these reasons, the preliminary writ of prohibition is made permanent.

Fischer, C.J., Draper, Russell, Powell, Breckenridge and Stith, JJ., concur.

Wilson, J., concurs in result.