STATE ex rel. Johnny NORMAN,
Relator,

v.

The Honorable David DALTON, Judge of the Circuit Court of the County of St. Charles, Missouri, Respondent.

No. 64834.

Missouri Court of Appeals,
Eastern District,
Writ Division Four.

March 29, 1994.

---

Amy L. Symons, Robert J. Wulff, Amelung, Wulff & Willenbrock, St. Louis, for relator.

Preston E. Roskin, Kenneth A. Leeds, Sharon Rhody, Clayton, for respondent.

SIMON, Judge.

Relator, Johnny Norman, defendant in an underlying personal injury action, seeks to prohibit Judge David Dalton of the Circuit Court of St. Charles County, respondent, from enforcing an order prohibiting *ex parte* communications with the physician of Donna Grant (Mrs. Grant), a plaintiff in the underlying action.

Mrs. Grant and her husband filed an action against relator in the Circuit Court of St. Charles County, alleging that relator negligently caused an automobile collision on August 15, 1990. Mrs. Grant alleged physical injuries and pecuniary damages and her husband sought damages for loss of consortium.

On June 15, 1993, relator filed his first set of interrogatories directed to plaintiff including a medical authorization form allowing access to plaintiff's medical records and related materials in the possession of her physician pertaining to "the examination, testing, care and/or treatment for any complaint of injury occurring on or about the 15th day of August, 1990 and for any such records, whether prior or subsequent to the aforementioned date involving any like or similar injuries or related complaints."

Plaintiff returned the authorization form with an additional clause included near her signature, providing "[y]ou are not permitted to discuss Donna Grant's medical conditions with anyone without the expressed written consent of Donna Grant or her attorneys, Preston E. Roskin or Kenneth A. Leeds."

On August 3, 1993, relator filed a motion to compel plaintiff to execute relator's medical authorization in its original, "clean" form. Relator claims that interrogatories were filed pursuant to Rule 57.01 and that plaintiff's inclusion of the above quoted clause impermissibly prohibited informal discovery permitted pursuant to Rule 56.01. Respondent heard this motion on September 2, 1993, and issued an order stating, "The Court having now duly considered the same [defendant's motion to compel plaintiff to execute medical authorization form] finds the Plaintiff has a right to prohibit ex parte communications with her physician.... THEREFORE, it is hereby Ordered ... by the Court that Defendant's Motion ... be denied."

The record is silent as to any attempt or present desire by relator to make *ex parte* contact with plaintiff's physician. At oral argument, counsel for relator stated that such contact with plaintiff's physician had not been attempted.

Relator subsequently applied for, and we issued a preliminary writ of prohibition on November 1, 1993.

We believe that our Supreme Court has dispositively ruled on the substantive law at issue in relator's petition for a writ of prohibition. Therefore, we will first address this issue.

Relator claims that the trial court's order prohibits a legitimate avenue of discovery which our Supreme Court has explicitly acknowledged in both *Brandt v. Pelican,* 856 S.W.2d 658 (Mo. banc 1993) (*Brandt I*) and *Brandt v. Medical Defense Assoc.,* 856 S.W.2d 667 (Mo. banc 1993) (*Brandt II*). Also, he claims that the additional clause added by plaintiff and the trial court's subsequent order are inconsistent with the law and relator might suffer considerable hardship and expense.

Further, relator contends that by failing to strike the additional clause added by plaintiff, respondent refused to acknowledge the right of relator to a "clean," undisturbed medical authorization form and erroneously declared the law as to relator's right to pursue *ex parte* discussions with plaintiff's physician. Respondent argues that the order is

proper because plaintiff has an interest in preserving the confidentiality of information which her physician might possess.

Parties involved in litigation have the right to perform discovery. Parties may freely conduct their discovery, as long as both parties follow the rules of discovery, as explicitly enacted by the Missouri Supreme Court. *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389, 392 (Mo. banc 1989); *See also* Rule 41.01, 41.04. When, as here, parties come to dispute the legal parameters of the Rules, it is within the discretion of the trial court to rule on the dispute. *State ex rel. Upjohn v. Dalton,* 829 S.W.2d 83, 85[1] (Mo. App.1992). The trial court administers the Rules within its discretion, but is limited by the parameters of the Rules. *State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 927[3] (Mo. banc 1992), *Upjohn,* 829 S.W.2d at 85[2, 4].

While medical information gathered about a patient by a physician is confidential, this information is precluded from disclosure in two ways. First, a physician is precluded from disclosing confidential information by the express language of section 491.060(5) R.S.Mo.Supp.1992. *Brandt I,* 856 S.W.2d at 661[1]. Although this statutory privilege is, by its express terms, strictly a testimonial privilege, *Id.,* physicians are also obligated not to disclose confidential medical information out of court. *Id.* at 662. "This [out of court] obligation arises out of the fiduciary relationship between the physician and the patient." *Id.*

However, "once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege ... so far as information from doctors or medical and hospital records bearing on that issue is concerned." *Brandt II,* 856 S.W.2d at 671[4–6]. In *Brandt II, Id.* at 672[4–6], the Court held that this waiver is a complete waiver as to both the testimonial privilege and the fiduciary duty of a physician not to disclose confidential information about a patient. Moreover, "once the plaintiff makes a decision to enter into litigation, this decision carries with it the recognition that any information within the knowledge of the treating physician relevant to the litigat-

ed issues will no longer be confidential." *Id.* at 674[8–9].

Here, plaintiff is seeking damages for physical injuries. As a result, she has waived the doctor-patient privilege as to information her physician possesses about such injuries. *Brandt II,* 856 S.W.2d at 671[4–6]. Therefore, plaintiff's physician may discuss, *ex parte,* plaintiff's relevant medical conditions because such information is subject to the waiver and is no longer confidential. While any information not subject to the waiver still remains confidential, our Supreme Court detailed not only the privilege but also plaintiff's remedy for disclosure of any confidential information: "[p]hysicians may well be advised to avoid ex parte discussions with patient's adversaries absent a clear understanding as to what medical information is relevant to the patient's injuries then at issue." *Id.* at 675[8–9]. However, if a physician engages in *ex parte* discussion and discloses any information that is beyond the scope of the waiver, "then the patient may maintain an action for damages in tort against the physician." *Id.* at 674[8–9].

By bringing her medical condition into issue, plaintiff waived the physician-patient privilege of confidentiality as to her medical information relevant to the underlying suit. *Id.* at 671[4–6]. While some information which her physician possesses might remain confidential, potential civil liability exists to ensure its confidentiality. *Id.* at 674[8–9]. Therefore, plaintiff cannot claim that her interest in preserving the confidential information precludes relator from attempting to hold *ex parte* discussions about non-confidential information with her physician.

In *Woytus v. Ryan,* 776 S.W.2d at 392, our Supreme Court held that, "the rules do not expressly forbid ex parte discussion, [nor] do the rules expressly authorize such discussion as a method of discovery." Additionally, in *Brandt I,* 856 S.W.2d at 662–663[3–4] (reaffirming this part of its holding in *Woytus,* 776 S.W.2d at 389), the Court ruled that a trial court cannot compel the plaintiff to authorize *ex parte* discussions with her physician. Moreover, "the physician cannot be forced over his own objection to engage in

informal ex parte discussions with the defense attorney." *Brandt I,* 856 S.W.2d at 662. "No witness is forced to participate in discovery except through the formal discovery procedures. If a witness refuses to be interviewed ... [*ex parte,*] the attorney's only practical recourse is to take the witness' deposition." *Id.* at 663, *Brandt II,* 856 S.W.2d at 674[8–9].

The right to engage in *ex parte* discussions with plaintiff's physician is subject to consent of the physician. *Brandt I,* 856 S.W.2d at 662. Moreover, although informal discovery is a legitimate avenue for parties, witnesses will only be required to participate in the formal discovery procedures as outlined in the Rules of Court. *Brandt I,* 856 S.W.2d at 663[3–4].

This court, in *Upjohn,* 829 S.W.2d at 84[1–2], held that, "the purpose of pretrial discovery is to aid the ascertainment of the truth, eliminate surprise, narrow issues, facilitate trial preparation, and obtain reliable information." Informal discovery provides parties engaged in a lawsuit with another viable avenue during the pretrial discovery process. Informal discovery through *ex parte* discussions can serve as a valuable resource for parties to the suit. *Brandt II,* 856 S.W.2d at 674[8–9]. Informal discovery can facilitate the discovery process and at points be helpful both to parties and to witnesses. *See Woytus,* 776 S.W.2d at 394. If the doctor chooses, he or she may participate in *ex parte* discussions. However, such *ex parte* discussions can create a precarious situation for the physician. "Physicians may be well advised to avoid ex parte discussions with the patient's adversaries absent a clear understanding as to what medical information is relevant to the patient's injuries then in issue." *Brandt II,* 856 S.W.2d at 675[8–9]. The physician might mistake what information has been properly waived and open himself up to civil liability. *Id.*

Therefore, while plaintiff might prefer her doctor not to participate in *ex parte* discussions, our Supreme Court has held that she cannot preclude her physician from doing so in these circumstances. The decision is the doctor's. *Brandt I,* 856 S.W.2d at 662[3–4]. Here, when the trial court attempted to preclude relator from *ex parte* discussions by granting the plaintiff the power to prohibit those discussions, it erroneously decided an issue which our Supreme Court has explicitly determined to the contrary. While *ex parte* discussions cannot be required to be authorized, *Woytus,* 776 S.W.2d at 392, and such discussions must be approached with due care, *Brandt II,* 856 S.W.2d at 675[8–9], the trial court erroneously declared and applied the law.

■ However, prohibition is an extraordinary remedy and is generally reserved for those situations where relator has suffered irreparable harm as a result of the trial court's ruling and an appeal is not an adequate remedy. *State ex rel. Douglas Toyota v. Keeter,* 804 S.W.2d 750, 752[4] (Mo. banc 1991).

■ Here, relator has not attempted to contact plaintiff's physician and, therefore, has not suffered irreparable harm. However, relator claims that respondent's order denies him a legal right because the order allows plaintiff to prohibit *ex parte* discussions between relator and plaintiff's physician. Therefore, the issue is whether prohibition is the proper remedy for an erroneous declaration of law, even though relator proved no present harm.

This court usually will not issue such a writ for a "nonjurisdictional error" of the trial court without some sort of showing on behalf of the relator of "absolute irreparable harm [that] may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order." *Douglas Toyota,* 804 S.W.2d at 752[4]. Prohibition cannot be used as a substitute for the normal appeal process. *Id.* A writ of prohibition is also proper where there exists either a clear excess of jurisdiction or a clear abuse of discretion "such that the lower court lacks the *power* to act as contemplated." *State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862 (Mo. banc 1986). A third situation where a writ of prohibition is proper "is perhaps the most unsettled area." *Id.* at 862[1]. When "presented with an action that is *not an abuse of discretion* or excess of jurisdiction *in the customary fashion* in

which we have interpreted those concepts," courts can issue a writ of prohibition if the party can satisfy a number of conditions. *Id.* (Emphasis added.)

Thus, where there is an issue which might otherwise escape the Court's attention for some time and which in the meantime is being decided by administrative bodies or trial courts whose opinions may ... [thus] become precedent; and the issue is being decided wrongly and is not a mere misapplication of law; and, where the aggrieved party *may* suffer considerable hardship and expense as a consequence of such action, we may entertain the writ [of prohibition] for the purposes of judicial economy under our authority to "issue and determine original remedial writs." Mo. Const. art. V § 4.1.

*Id.* at 862–863. (Emphasis added.)

Here, the factual situation falls into the third category expressed by our Supreme Court in *Noranda Aluminum.* 706 S.W.2d at 862–863[1]. In its order, the trial court erroneously declared the law. Moreover, our Supreme Court has held the right in dispute here to be of substance and value which if denied may cause considerable hardship and expense to relator.

In *State ex rel. Peabody Coal Co. v. Clark,* 863 S.W.2d 604, 608–609[9] (Mo. banc 1993), our Supreme Court used this third category, as determined in *Noranda Aluminum,* to issue a writ of prohibition. In *Peabody,* the Court cited *Noranda Aluminum* to explain that this category is appropriate "where [the] issue is wrongly decided by [the] trial court, [the] aggrieved party 'may suffer considerable hardship' and there is no adequate remedy by appeal." In *Peabody,* relator, a coal company, brought an action seeking a writ of prohibition to prevent discovery of certain documents it alleged were protected by the attorney-client privilege. The *Peabody* Court held, *Id.* at 608:

Prohibition is an extreme remedy. It is appropriate in this case because the trial court exceeded its authority by ordering discovery of privileged material. Once the privilege is discarded and the privileged material produced, the damage to the party against whom discovery is sought is both severe and irreparable. The damage cannot be repaired on appeal.

Here, the trial court erroneously declared the law in an order it issued during its administration of pretrial discovery, and relator may suffer considerable hardship and expense due to the trial court's erroneous order. Further, the trial court and other courts and agencies may consider this erroneous declaration to be a correct statement of the law, applying it in other cases. Therefore, a writ of prohibition should be issued "for the purposes of judicial economy." *Noranda Aluminum,* 706 S.W.2d at 863[1].

Therefore, the preliminary writ of prohibition is made permanent.

SMITH, P.J., and KAROHL, J., concur.