**STATE ex rel. UNION ELECTRIC COMPANY, d/b/a Ameren UE, Relator,**

v.

**The Honorable David A. DOLAN, Respondent.**

No. SC 88573.

Supreme Court of Missouri, En Banc.

June 24, 2008.

Lawrence L. Pratt, Mary A. Lindsey, St. Louis, for relator.

Thomas K. Neill, Maurice B. Graham, St. Louis, Richard G. Steele, Cape Girardeau, for respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

This is a petition for writ of prohibition involving a wrongful death action based on premises liability. In the underlying action, Angela Friley, the widow of William Friley ("decedent"), filed a wrongful death lawsuit against Linda Hampton and Union Electric Company d/b/a/ Ameren UE ("Ameren") after her husband was fatally injured while replacing Ameren transmission lines. Ameren subsequently filed a motion to dismiss for failure to state a claim upon which relief could be granted under Rule 55.27(a), but the circuit court overruled the motion. Ameren then sought prohibition, or in the alternative mandamus, in the Court of Appeals, Southern District, and failing there, petitioned for a writ in this Court. Mo. Const. art. V, sec. 4. This Court then issued a preliminary writ, which is now made absolute.

## I. BACKGROUND

In October 2005, Asplundh Construction, Corp., an independent contractor, was working for Ameren to remove, repair, and install transmission lines and utility poles in the Ameren service area on County Road 472 in Scott County, Missouri. Decedent was an Asplundh employee working on the job. On October 20, during the course of this work, decedent was attached to a pull rope, which went to the top of a utility pole and then back down to a device that attached the rope to an electrical wire that ran across the roadway. While decedent was attached to the pull rope, defendant Hampton drove her car down Road 472 and struck the electrical wire, and, as a result, decedent was jerked to the top of the utility pole, struck it, and fell to the ground, fatally injured.

Thereafter, Friley filed the underlying wrongful death suit against Hampton and Ameren. The parties advise that Friley is also pursuing workers' compensation benefits from Asplundh, but only the claim against Ameren is at issue here. Friley's novel claim, which appears to be a variation of premises liability, is that Ameren was the "host employer" of Asplundh and as such was "responsible for the safety of the project." The particulars of these allegations are set forth in the following paragraphs, taken from the petition:

17. That defendant Ameren owns and operates an electrical power generator transmission and distribution network and, in furtherance of its business operations, contracted with Asplundh to erect, install, alter, replace and repair transmission lines of Ameren, and Ameren thus has certain non-delegable duties to hire contractors who have employees with the skills, knowledge, training, tools and protective equipment necessary to perform Ameren's work safely, and Ameren must also [e]nsure the safety of the workplace where Asplundh was installing Ameren's new lines and in furtherance thereof;

a. is required to assess hazards related to the work being performed by

contractors contracted by Ameren;

. . .

d. is required to take appropriate measures to enforce the terms of any contract between Ameren and Asplundh with respect to safe work practices; and

e. is required to compel Asplundh to enforce compliance with all safety rules imposed by the contract.

18. Ameren was careless and negligent in [e]nsuring that the job site at which decedent ... was working was safe and protected, and also that safe work practices were being carried out, and that such carelessness and negligence caused or contributed to cause the death of [decedent]. Such carelessness and negligence of Ameren included the following:

a. failing to install or make arrangements for the installation of traffic warning signs at the work site;

b. failing to warn employees of Asplundh of the risks of injury in allowing the electrical line being erected to be extended across the roadway upon which vehicles were traveling;

c. failed to place a clear, conspicuous and comprehensible warning sign(s) on or around the work site itself which would have alerted persons operating vehicles on the roadway, including defendant Hampton, of the fact that work was being performed at the site;

d. failing to adequately block, barricade or otherwise guard the work area as the work was being performed;

e. failing to adequately arrange for a detour around the work site during the time work was being performed; and

f. failing to arrange for traffic to be stopped as the utility line was being pulled up from the roadway.

In its motion to dismiss for failure to state a claim upon which relief could be granted, Ameren argued that no Missouri court, nor any other court elsewhere, has held a property owner liable under a "host employer" theory and that Friley failed to allege any of the conventional grounds for premises liability: (1) that Ameren "controlled the jobsite or the activities of [decedent] and his employer Asplundh;" (2) that Ameren's "involvement in overseeing the construction was substantial;" or (3) that Ameren "controlled the physical activities of Asplundh or the details of the manner in which the work was done." After extended briefing, the trial court overruled the motion. Ameren now seeks a writ of prohibition or, in the alternative, mandamus ordering the trial court to dismiss Friley's wrongful death claim.

## II. PROPRIETY OF PROHIBITION AND STANDARD OF REVIEW

### A.

In general, prohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent the exercise of extra-jurisdictional power. *State ex rel. Broadway–Washington Assocs., Ltd. v. Manners,* 186 S.W.3d 272, 274 (Mo. banc 2006). In the context of a motion to dismiss for failure to state a cause of action, it has long been held that "where a petition reveals that the pleader has not stated and cannot state a cause of action of which the circuit court would have jurisdiction, then prohibition will lie." *State ex rel. Johnson v. Sevier,* 339 Mo. 483, 98 S.W.2d 677, 680 (1936). More recently, this Court has simply held that prohibition will lie if plaintiff's petition "does not state a viable theory of recovery, and relator was entitled to be dismissed from the suit as a matter of law." *State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536, 539 (Mo. banc 1988) (internal citation omitted) (issuing writ of prohibition for failure

to state a cause of action against state park superintendent for negligence in drowning death of boy scout because superintendent had immunity under public duty doctrine). *See also State ex rel. Diehl v. Kintz,* 162 S.W.3d 152 (Mo.App. 2005) (issuing writ of prohibition for failure to state a cause of action in defamation case). Moreover, the failure to state a cause of action is a jurisdictional defect because there is no subject matter on which the court can take jurisdiction. *See Adkisson v. Dir. of Revenue,* 891 S.W.2d 131, 132 (Mo. banc 1995), *citing Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17, 21 (Mo. banc 1983).

■ Friley's categorical claim that a writ of prohibition does not lie following the denial of a motion to dismiss for failure to state a claim is simply incorrect. There are two principal cases on which she relies: *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983), which appears to be an aberration, and *State ex rel. Dick Proctor Imports, Inc. v. Gaertner,* 671 S.W.2d 273 (Mo. banc 1984), which, though it cites *Morasch,* is distinguishable in any event. In *Morasch,* this Court declined to issue a writ of prohibition for failure to state a claim reasoning that to proceed with the case despite the defect in the petition was merely "an error of law rather than excess of jurisdiction." 654 S.W.2d at 892 (internal citation omitted). In so ruling, however, the Court cited *Sevier,* 98 S.W.2d at 680, and other like cases, but then disregarded (or misapplied) them. This Court in *Dick Proctor Imports,* on the other hand, declined to issue a writ of prohibition on a motion to dismiss for failure to state a claim that was ancillary to a motion to dismiss for improper venue. 671 S.W.2d at 275. Although the Court cited *Morasch,* it made clear that "[r]elators [did] not allege fraudulent or pretensive joinder," *id.* at n. 1, which was the more

proper course of action to challenge the sufficiency of the cause of action for venue purposes. In short, these cases should not be read to eviscerate the rule that prohibition will lie on a motion to dismiss for failure to state a cause of action.

## B.

■ On a motion to dismiss for failure to state a cause of action, the court reviews the allegations of the petition to determine whether the facts pled therein are sufficient as a matter of law. *Grewell v. State Farm Mut. Auto. Ins. Co.,* 102 S.W.3d 33, 36 (Mo. banc 2003). A motion to dismiss for failure to state a cause of action:

> assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo. banc 2002). The petition will "withstand the motion if it invokes substantive principles of law entitling plaintiff to relief and alleges ultimate facts informing defendant of that which plaintiff will attempt to establish at trial." *Grewell,* 102 S.W.3d at 36 (internal citation omitted).

## III. ANALYSIS

■ The sole issue in this case is whether Friley has sufficiently stated a cause of action in negligence for which Ameren may be liable. She alleges that Ameren could be held liable based on the facts pled in her petition under several alternative theories, all relating to premises liability.

First, Friley asserts Ameren may be held liable based on the general rule that a landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees. *Owens v. Shop 'N Save Warehouse Foods,* 866 S.W.2d 132, 134 (Mo. banc 1993); RESTATEMENT (SECOND) OF TORTS sec. 343 (1965). An employee of an independent contractor performing work contracted for by the landowner is one such invitee. *Id.* However, as Friley acknowledges, an exception to this rule arises when:

> the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction. [Then] the duty of care shifts to the independent contractor. The landowner, no longer considered the possessor of the land, is thus relieved of potential liability. On the other hand, to establish that the landowner *retained* possession and control of the premises and the attendant duty of care, [the plaintiff] must show that the landowner *controlled the jobsite and the activities of the contractor.* As the Court of Appeals stated in *Halmick,* "the owner's involvement in overseeing construction must be *substantial* ... the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done."

*Matteuzzi v. Columbus P'ship, L.P.,* 866 S.W.2d 128, 132 (Mo. banc 1993) (quoting *Halmick v. SBC Corporate Servs., Inc.,* 832 S.W.2d 925, 929 (Mo.App.1992) (second and third emphasis added)). Furthermore, as these rules pertain to control of the premises that "must go beyond securing compliance with the contracts," it is not enough that the landowner had the right to secure compliance with the safety measures in the contract—the landowner must have assumed an affirmative duty under the contract to implement those measures. *Werdehausen v.Union Elec. Co.,* 801 S.W.2d 358, 364 (Mo.App.1990).

Although Friley asserts that she has sufficiently alleged facts that meet the elements of premises liability by claiming decedent was working on the power distribution network owned by Ameren, her petition is void of any language suggesting that Ameren owned the land or even had a utility easement on the premises on which decedent's fatal accident occurred. But, even if Ameren was a landowner of some sort, the petition still lacks any language or inference indicating Ameren substantially controlled the jobsite and the activities of the independent contractor Asplundh. Absent such factual allegations, Ameren cannot be held liable under a premises liability theory.

Friley's primary argument, however, which is to be distinguished from her general premise liability claim above, is that Ameren may be held liable as a "host employer" because Ameren breached its "duty to [e]nsure the safety of the workplace where power lines were being installed...." This Court has never imposed liability based on a "host employer" theory, but even that theory, Friley acknowledges, requires the possessor of land to exert "substantial control" over the premises. The difference in the host liability theory, as this Court understands it, is that it is not based on Ameren's actual control of the premises, but on the notion that Ameren should be deemed to have controlled the jobsite because it had a duty to plaintiff to do so. The requirement of substantial control is met, Friley argues, by the specific allegations in the petition that Ameren had the duties to: "assess hazards related to the work being performed; inform Asplundh of hazards that Asplundh or its employees might fail to

recognize; monitor and observe employees of Asplundh to prevent unsafe working conditions; take appropriate measures to enforce the terms of its contract with Asplundh with respect to safe work practices; and compel Asplundh to enforce compliance with safety rules imposed by the contract."

None of these allegations, however, individually or in the aggregate, is an allegation of fact that Ameren did, indeed, control the jobsite and the activities of the contractor. Control of the jobsite, as noted, is a degree of control that must go beyond securing compliance with the contracts and must encompass "controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done." *Matteuzzi*, 866 S.W.2d at 132. Plaintiff's allegations, instead, are simply claims that Ameren had a duty to do the very things for which *Matteuzzi* holds that there is no duty. In effect, to adopt the host employer theory would be to overrule *Matteuzzi* and the several cases on which it relies.

■■■■■ Next, Friley argues that Ameren can be held liable under the theory that the work performed by decedent was inherently dangerous, yet another species of premises liability. As noted, a landowner hiring an independent contractor to perform work is generally not liable for the negligence of the independent contractor or of the contractor's servants. *Id.* at 130. Under the inherently dangerous exception, however, where the activity undertaken by the independent contractor was inherently dangerous, the landowner will be held liable for injuries to innocent third parties resulting from the failure of the independent contractor to take special or reasonable precautions against the inherent risks or dangers. *Id.* That exception, though, is limited to the protection of innocent third parties not involved in the inherently dan-

gerous activity, and the reason for the limitation is that the workers themselves—the employees of the independent contractors—are covered by the workers' compensation laws. *Zueck v. Oppenheimer Gateway Props., Inc.*, 809 S.W.2d 384, 387–88 (Mo. banc 1991). It follows that even if the work in question was an inherently dangerous activity, Ameren is not liable to the employees of its independent contractor.

■■■■ Finally, Friley submits two cursory, three-sentence arguments in her brief that merit about the same length of discussion here. First, she claims that Ameren may be held liable "on a theory that it failed to provide regulated safeguards" in violation of OSHA regulations, and second, she claims that Ameren may be held liable "on a theory that it negligently hired an independent contractor." In support of the first argument, Friley cites the aged case of *Brannock v. Elmore*, 114 Mo. 55, 21 S.W. 451 (1893), which imposed liability against the owner of a lot for injuries caused by the negligence of his independent contractor while blasting rock on the lot in violation of a city ordinance. Suffice it to say that the case involved only the liability of the landowner to outsiders or members of the general public, not to employees of the independent contractor hired by the lot owner. *Id.* at 453. On the second claim, Friley states without elaboration that there is a cause of action simply because the petition alleges that Ameren "has certain non-delegable duties to hire contractors who have employees with the skills, knowledge, training, tools and protective equipment necessary to perform Ameren's work safely...." Even if that were the law, Friley made no allegation that the independent contractor, Asplundh, did in fact lack the requisite knowledge, skill, experience, or competence to complete the work. And even

assuming that Asplundh was negligent in performing the work contracted for, that negligence is not enough to establish that Ameren was negligent in hiring Asplundh.

## IV. CONCLUSION

In sum, the facts pleaded do not meet the elements of a recognized cause of action, or of a cause of action that this Court is willing to recognize. Therefore, this Court makes its preliminary writ of prohibition absolute. The preliminary writ is modified, however, to allow plaintiff to amend her petition to state a proper cause of action, and absent such an amendment, the court shall take no action other than dismissing the petition.

All concur.