**STATE of Missouri ex rel. John W. COLLINS, M.D., Relator,**

**v.**

**Honorable Marco ROLDAN, Respondent.**

**No. WD 70350.**

Missouri Court of Appeals, Western District.

June 9, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 2009.

Application for Transfer Denied Sept. 1, 2009.

Charles H. Stitt, Kansas City, MO, Counsel for Relator.

David E. Larson, Liberty, MO, Counsel for Respondent.

Before JAMES EDWARD WELSH, P.J., LISA WHITE HARDWICK, and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Relator John W. Collins, M.D., asks us to issue a writ requiring the circuit court to compel the plaintiff in a medical malpractice action to execute the medical authorization form which Collins had tendered to plaintiff. We issued a preliminary writ of prohibition on December 11, 2008. Having concluded that decisions of the Missouri Supreme Court foreclose the relief Collins seeks, we now quash our preliminary writ.

**Factual Background**

On May 23, 2008, Carli Smith, by her mother (Sherri Smith) as next friend, filed a medical malpractice action against three doctors, including Relator Collins. Collins requested that Smith execute a medical authorization form he provided her. The authorization form provided Smith's consent to the disclosure to Smith's or Collins' counsel, or to any persons present during depositions in the case, of "[a]ny and all information, including records, concerning any medical care provided to, or medical treatment of, the person named above."

Smith's mother signed the medical authorization form for her minor daughter. However, Sherri Smith modified the authorization by specifying that the information subject to disclosure included only "[m]edical records and bills concerning any medical care provided to, or medical treatment of, the person named above." In addition, she added the following prominent qualification at the top of the authorization's first page:

THIS AUTHORIZATION DOES NOT EXTEND TO PRIVATE INTERVIEWS BETWEEN ANY HEALTH CARE PROVIDER LISTED BELOW (WITH THE EXCEPTION OF DR. COLLINS) AND REPRESENTATIVES OF THE LAW FIRM OF SHAFFER LOMBARDO SHURIN [COLLINS' LAWYERS]. ANY SUCH CONVERSATIONS WOULD BE CONTRARY TO THE EXPRESS WISHES OF SHERRI L. SMITH ON BEHALF OF CARLI A. SMITH.

Collins repeated his request that Smith execute the medical authorization form he had tendered, omitting this limiting language. Sherri Smith refused.

Collins filed a motion to compel requesting that the court order Smith to execute his form of medical authorization. The circuit court overruled Collins' motion. Collins then filed a petition for a writ of prohibition with this Court, requesting that we direct the circuit court to compel Smith to execute a medical authorization form without the limiting language. On December 11, 2008, this court issued a preliminary writ of prohibition ordering the circuit court to refrain from further action in the case until further order of this Court.

**Analysis**

**A.**

■ "Prohibition is a discretionary writ that only issues to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *State ex rel. Marianist Province of the U.S. v. Ross,* 258 S.W.3d 809, 810 (Mo. banc 2008); *accord, State ex rel. Union Elec. Co. v. Dolan,* 256 S.W.3d 77, 81 (Mo. banc 2008).[1]

1. Although styled as a petition for a writ of prohibition, the relief Collins seeks—a ruling

by this Court directing the circuit court to issue an order requiring Smith to execute

## B.

The focus of Collins' Petition, and his supporting briefing, is the propriety of the legend Sherri Smith added to the top of the medical authorization form Collins tendered to her, which admonished Smith's health-care providers that the authorization "does not extend to private interviews" with defense counsel, and that "[a]ny such conversations would be contrary to [the Smiths'] express wishes." It may well be that the admonition Sherri Smith added to the authorization form was inappropriate, and that an extraordinary writ would be the appropriate vehicle to require the trial court to order execution of an authorization without this legend.[2] We need not definitively resolve that issue, however, because we believe—for an entirely separate reason—that Collins was not entitled to have the court order the Smiths to sign his form of authorization.

In his briefing and argument, Collins has steadfastly maintained that, other than the addition of the legend at the top of the authorization form, Sherri Smith did not alter the form Collins tendered. Thus, in his opening brief Collins argues that "[i]t is undisputed in this case that the medical authorization that Relator is requesting is properly-tailored, given that the medical authorization that was previously signed [by Sherri Smith] describes the scope of the authorized disclosure in exactly the same terms as the medical authorization being requested by Relator."

Unfortunately, Collins' claim that Sherri Smith made no alteration to Collins' form of medical authorization, other than to add the admonition concerning *ex parte* communications, is inaccurate. To the contrary, the medical authorization form Sherri Smith executed on her daughter's behalf also alters the scope of the information subject to disclosure. The form Collins provided to the Smiths states that

> The information to be disclosed is described as follows:
> **Any and all information, including records, concerning any medical care provided to, or medical treatment of, the person named above.**

(Italics added.) The form Sherri Smith returned, however, narrowed the scope of "[t]he information to be disclosed," providing that disclosure was only authorized with respect to *"[m]edical records and bills* concerning any medical care provided to, or medical treatment of, the person named above." (Emphasis added.)

---

Collins' preferred form of medical authorization—may properly lie in mandamus. Even if Collins incorrectly denominated the relief he seeks, however, this would not affect our ability to grant any relief to which he is otherwise entitled. *See, e.g., State ex rel. Leigh v. Dierker,* 974 S.W.2d 505, 506 (Mo. banc 1998) ("This Court has treated petitions for writs of prohibition as petitions for writs of mandamus when the remedy sought by the relator is more appropriate under mandamus practice than prohibition practice."); *State ex rel. Rosen v. Smith,* 241 S.W.3d 431, 433 (Mo.App. E.D.2007) ("On an application for a writ, we may grant the appropriate remedy irrespective of the relator's prayer.").

**2.** *See State ex rel. Jones v. Syler,* 936 S.W.2d 805, 807, 809 (Mo. banc 1997) (holding that

trial court did not abuse its discretion by refusing to require that medical authorization contain admonition to physician not to discuss medical conditions beyond those put in issue in litigation and reminding physician that, if conversation went further, "then I may maintain an action for damages in tort against you for breach of the patient/doctor privilege"); *State ex rel. Norman v. Dalton,* 872 S.W.2d 888, 889, 892 (Mo.App. E.D. 1994) (issuing writ of prohibition to prevent trial court from enforcing order that permitted plaintiff to add the following admonition to medical authorization: "You are not permitted to discuss Donna Grant's medical conditions with anyone without the expressed written consent of Donna Grant or her attorneys....").

The difference between the items whose disclosure the Smiths were willing to authorize ("medical records and bills") versus the disclosure Collins sought (of "any and all information, including records"), is significant, and in our view dispositive of Collins' writ application.

The Smiths argue that "[t]here is no question that th[e] language [of Collins' form] is deliberately broad enough to encompass *ex parte* communications," and that "[t]he 'clean' authorization advocated by [Collins] requires the [Smiths] to authorize *ex parte* meetings with treating physicians." We agree. Collins offers no *other* explanation for the different, and broader, wording of his authorization form. Moreover, the evident purpose of Collins' form—to expressly authorize *ex parte* communications—is confirmed by the extremely broad definition of "records" subject to disclosure even under the form of authorization Sherri Smith executed.[3]

Under the federal Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat. 1936 ("HIPAA"), and the Department of Health and Human Services' implementing regulations, it appears that Collins requires a medical authorization that is broad enough to comprehend *ex parte* communications with Smith's health-care providers in order for him to conduct such *ex parte* discussions pursuant to the authorization. Under HHS' Privacy Rule, protected "health information" includes "any information, whether oral or recorded in any form or medium. . . ." 45 C.F.R. § 160.103. Under 45 C.F.R. § 164.502(a), "[a] covered entity may not use or disclose protected health information, except as permitted or required by" the Privacy Rule. The rule concerning disclosure pursuant to a medical authorization provides in relevant part:

> Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization.

45 C.F.R. § 164.508(a). Among the "core elements" of a valid HIPAA authorization, it must contain "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion." 45 C.F.R. § 164.508(c)(1)(i). Thus, to the extent a party seeks to rely on a medical authorization to support disclosure, the Privacy Rule would appear to require that the authorization be worded broadly enough to encompass *ex parte* interviews.[4]

To the extent Collins seeks a court order compelling Smith to execute a medical au-

---

**3.** The form Sherri Smith executed and returned to Collins provides:

> To the extent fairly described in any limiting description of information, records and testimony to which this disclosure authorization relates, the records to which this authorization applies include, but are not limited to, the following: any and all complete medical and/or hospital charts, office notes, histories, diagnoses, laboratory reports, physicians' orders, physicians' progress notes, nursing progress notes, admission and discharge summaries, physical therapy and rehabilitation records, radiology reports, MRI reports, CT reports, EKG and/or EEG reports, emergency room records, pharmaceutical or prescription records, data relating to treatment for substance or alcohol abuse, medical evaluations or reports, test scores, pathology reports, pathology slides, paraffin blocks, autopsy reports, autopsy slides, certificate of death, postmortem evaluation, patient billing statements, correspondence and radiological films.

**4.** Indeed, Collins himself essentially concedes as much: he acknowledges that "[t]he general rule with regard to disclosure of information under the Privacy Rules is that a 'covered entity' (a term that includes physicians) may

thorization broad enough to comprehend *ex parte* interviews, however, the relief he requests runs headlong into decisions of the Missouri Supreme Court concerning *ex parte* contacts with a litigant's treating physicians. While the Supreme Court has held that any privilege surrounding a plaintiff's medical information is waived "once there is an issue joined concerning the plaintiff's medical condition," and that this principle applies "to an ex parte conference that is within the scope of the waiver," the Court has also emphasized that "we will not require the plaintiff to execute medical authorizations authorizing his treating physician to engage in ex parte discussions." *Brandt v. Med. Defense Assocs.*, 856 S.W.2d 667, 674 (Mo. banc 1993); *accord Brandt v. Pelican*, 856 S.W.2d 658, 662 (Mo. banc 1993) ("We reaffirm our holding in *[State ex rel.] Woytus [v. Ryan*, 776 S.W.2d 389 (Mo. banc 1989),] that we will not require the plaintiff to execute medical authorizations authorizing his treating physician to engage in ex parte discussions."); *State ex rel. Norman v. Dalton*, 872 S.W.2d 888 (Mo.App. E.D. 1994) ("in *Brandt I*, the Court ruled that a

trial court cannot compel the plaintiff to authorize *ex parte* discussions with her physician").[5]

■ We recognize that the holding of the *Brandt* cases—that a court will not compel a patient to execute a medical authorization authorizing *ex parte* discussions—may be anachronistic in a post–HIPAA world, where disclosures of protected health information to third parties require relatively formal, explicit authorization.[6] Nevertheless, this is the balance struck by the Supreme Court in the *Brandt* cases: while *ex parte* contacts are not prohibited to the extent they fall within the privilege waiver triggered by the patient's pleadings, a third party seeking such *ex parte* contacts may not ask the court to compel the patient to consent to, or to compel *the physician* to actually participate in, such discussions. To the extent this aspect of the *Brandt* cases' holding needs to be re-examined in light of HIPAA's requirements, that is an issue for the Supreme Court.

### Conclusion

Because we conclude that Collins is, in essence, seeking a court order compelling

---

not disclose protected health information, *except* as permitted by the Privacy Rules"; "[t]he general rule goes on to state that a covered entity *is* permitted to disclose protected health information, under circumstances that include" execution of a valid medical authorization.

5. In *State ex rel. Jones v. Syler*, 936 S.W.2d 805 (Mo. banc 1997), the Court considered an authorization that authorized disclosure of "any and all information" concerning a plaintiff's medical treatment, including "copies of all hospital and medical records." *Id.* at 806. While the Court did not take issue with the breadth of "any and all information," the Court did observe that:

In *[State ex rel.] Stecher [v. Dowd*, 912 S.W.2d 462 (Mo. banc 1995)], we defined the proper scope of medical authorizations by stating:

[D]efendants are not entitled to any and all medical records, but *only those medical records that relate to the physical conditions at issue under the pleadings.* It follows that medical authorizations must be tailored to the pleadings, and this can only be achieved on a case-by-case basis.

*Jones*, 936 S.W.2d at 807 (quoting *Stecher*, 912 S.W.2d at 464; emphasis added by *Jones* court).

6. At oral argument, Collins' counsel acknowledged that, to the extent Missouri law authorized *ex parte* interviews in the absence of a valid medical authorization, it would be contrary to, and preempted by, the Privacy Rule. While we need not decide that issue here, Collins' argument underscores the tension between the holding of the *Brandt* cases and HIPAA's requirements.

Smith to execute a medical authorization authorizing *ex parte* interviews with her treating physicians, the circuit court did not err in refusing the requested relief. Because it was improvidently granted, we quash the preliminary writ of prohibition previously issued.[7]

Judge HARDWICK concurs in principal opinion.

Judge WELSH concurs in result, with separate opinion.

JAMES EDWARD WELSH, Judge, concurring.

I concur with the majority's opinion quashing our preliminary writ in prohibition, but I write in the hope that my rationale, although not that of the majority, might be of some assistance to those judges and lawyers that struggle with these discovery issues on a daily basis. *In re N.D.C.*, 229 S.W.3d 602, 604 (Mo. banc 2007) (writ of prohibition is appropriate where an issue would otherwise escape review). Given that the issue of whether or not the plaintiff in this case must execute a medical authorization form is a matter involving informal discovery, Judge Marco Roldan appropriately refused to compel the plaintiff to execute the medical authorization form. Judge Roldan did not have the authority to compel the plaintiff to sign a medical authorization form and thus embroil himself in what is essentially an informal discovery process.

"Parties involved in litigation have the right to perform discovery. Parties may freely conduct their discovery, as long as both parties follow the rules of discovery, as explicitly enacted by the Missouri Supreme Court." *State ex rel. Norman v. Dalton*, 872 S.W.2d 888, 890 (Mo.App.1994)

(citing *State ex rel. Woytus v. Ryan*, 776 S.W.2d 389, 392 (Mo. banc 1989)). When the parties dispute the legal parameters of the discovery rules, it is within the circuit court's discretion to rule on such a dispute. *Id.* The circuit court's discretion, however, is limited by the parameters of the rules. *Id.*

"Determination of the limits of authorized discovery in the State of Missouri commences with Rule 56." *Woytus*, 776 S.W.2d at 391. Rule 56.01(a) says:

Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission.

Regarding the scope of discovery, Rule 56.01(b) provides:

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

It is not ground for objection that the information sought will be inadmissible at the trial if the information sought

---

**7.** Based on our disposition, we need not address the issue discussed in the concurring opinion.

appears reasonably calculated to lead to the discovery of admissible evidence.

The party seeking discovery shall bear the burden of establishing relevance.

In regard to experts, Rule 56.01(b)(4) says:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Rule 56.01(b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(a) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial by providing such expert's name, address, occupation, place of employment and qualifications to give an opinion, or if such information is available on the expert's curriculum vitae, such curriculum vitae may be attached to the interrogatory answers as a full response to such interrogatory, and to state the general nature of the subject matter on which the expert is expected to testify, and the expert's hourly deposition fee.

(b) A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest injustice would result, the court shall require that the party seeking discovery from an expert pay the expert a reasonable hourly fee for the time such expert is deposed.

Further, Rule 56.01(b)(5) says in regard to non-retained experts:

A party, through interrogatories, may require any other party to identify each non-retained expert witness, including a party, whom the other party expects to call at trial who may provide expert witness opinion testimony by providing the expert's name, address, and field of expertise. For the purpose of this Rule

56.01(b)(5), an expert witness is a witness qualified as an expert by knowledge, experience, training, or education giving testimony relative to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence. Discovery of the facts known and opinions held by such an expert shall be discoverable in the same manner as for lay witnesses.

These provisions of Rule 56.01 provide the parameters of formal discovery in a case. However, Rule 56.01(f)(2) also recognizes that the parties may agree and consent to modify these formal procedures and use what is often termed as "informal discovery." *Woytus*, 776 S.W.2d at 391; *Norman*, 872 S.W.2d at 891. Rule 56.01(f)(2) says: "Unless the court orders otherwise, the parties may by written stipulation . . . modify the procedures provided by these Rules for other methods of discovery."

I find nothing in the formal discovery rules regarding the use of medical authorizations. The most that can be said is that in *State ex rel. McNutt v. Keet*, 432 S.W.2d 597 (Mo. banc 1968), the Missouri Supreme Court recognized that when a circuit court compels production of medical and hospital records pursuant to the formal rules of discovery that:

[I]f authority from the plaintiffs is required by the records custodian, then the plaintiffs, who have control of this aspect of the situation, should be required by order of [the circuit court], if necessary, to execute the necessary authority to the records custodian to make said records available to [the defendants].

*Id.* at 602. *McNutt*, therefore, involved the necessity of medical authorizations for production of document cases in formal discovery.[1]

---

1. Collins asserts that McNutt stands for the

proposition that, "if a medical authorization

Although case law is plentiful about the scope of medical authorizations in discovery, *see State ex rel. Jones v. Syler,* 936 S.W.2d 805 (Mo. banc 1997); *State ex rel. Stecher v. Dowd,* 912 S.W.2d 462 (Mo. banc 1995); *State ex rel. Pierson v. Griffin,* 838 S.W.2d 490 (Mo.App.1992); *State ex rel. DeGraffenreid v. Keet,* 619 S.W.2d 873 (Mo.App.1981); little is found about whether the issuance of medical authorizations between a defendant and a plaintiff's physician is a matter of formal or informal discovery. A case that approaches that issue is *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389 (Mo. banc 1989).

In *Woytus,* the Missouri Supreme Court was faced with the issue of whether or not the circuit court possessed the authority to compel a patient to authorize *ex parte* discussions with the patient's treating physician. *Id.* at 391. The *Woytus* court held that the circuit court lacked the authority under the discovery rules to order a patient to execute a medical authorization form which would expressly authorize *ex parte* discussions with his or her treating physician. *Id.* at 395. In so holding, the *Woytus* court also acknowledged that nothing within the rules for formal discovery gave the circuit courts the authority to order a patient to execute a medical authorization form. The *Woytus* court said:

> In balancing the interests involved, however, this Court will not require that a non-enumerated discovery method be added to those already available under the *Rules.* Information or evidence that can be obtained legitimately through *ex parte* discussion can also be obtained through the methods of discovery listed in the *Rules.* Any burdens caused defendants by being restricted to the specially enumerated discovery procedures are outweighed by the potential risks to the physician-patient relationship in deviating from those procedures.

*Id.*[2]

Collins asserts that *Woytus* is no longer good law because the Missouri Supreme Court abrogated *Woytus* in *Brandt v. Pelican,* 856 S.W.2d 658 (Mo. banc 1993) (*Brandt I* ) and *Brandt v. Medical Defense Associates,* 856 S.W.2d 667 (Mo. banc 1993) (*Brandt II* ). In *Brandt I,* the Court was faced with the issue of whether *ex parte* communications with a plaintiff's treating physician are prohibited during

is required, in order for a personal-injury defendant to obtain medical information . . ., the personal-injury plaintiff should be required by the trial court to execute the necessary medical authorization to make such information available to the defendant." Collins, however, fails to appreciate the fact that the medical authorization which the plaintiff was required to produce in McNutt was in a formal discovery setting. The McNutt court was merely acknowledging that, before a records custodian produces a plaintiff's medical records, the records custodian may require a medical authorization from the plaintiff, and the circuit court had the authority to order the plaintiff to execute such authorization, if necessary. *McNutt,* 432 S.W.2d at 602.

**2.** In *State ex rel. Norman v. Dalton,* 872 S.W.2d 888, 891 (Mo.App.1994), this court's

Eastern District recognized that the issuance of medical authorizations in regard to *ex parte* communications between a defendant and a plaintiff's physician is a matter informal discovery. The court said: "Informal discovery provides parties engaged in a lawsuit with another viable avenue during the pretrial discovery process. Informal discovery through *ex parte* discussions can serve as a valuable resource for parties to the suit. Informal discovery can facilitate the discovery process and at points be helpful both to the parties and to witnesses." *Id.* (citation omitted). Moreover, in *Brandt v. Medical Defense Associates,* 856 S.W.2d 667, 674 (Mo. banc 1993), the Missouri Supreme Court also seemingly recognized the value of informal discovery through ex parte discussions, although the Court did not speak to the need of obtaining medical authorizations from the plaintiff.

discovery. 856 S.W.2d at 661. The *Brandt I* court acknowledged the holding in *Woytus* and said:

> In *Woytus,* this Court held that we would not require the plaintiff to execute medical authorizations allowing defendants to have ex parte discussions with the plaintiff's treating physicians. In *Woytus,* we were not asked to rule, and we did not rule, on the issue of whether the medical privilege contained in section 491.060(5) prohibits such ex parte discussions....
>
> ....
>
> We reaffirm our holding in *Woytus* that we will not require the plaintiff to execute medical authorizations authorizing his treating physician to engage in ex parte discussions. It should be noted that the physician cannot be forced over the physician's own objection to engage in informal ex parte discussions with the defense attorney. The contention of the defense in the present case that they were entitled to talk to Dr. Kodner and Dr. Myers acknowledged that such a right is subject to the consent of the doctors and, in fact, in the present situation both doctors willingly consented to talk to defendant's attorneys. This limitation embodies the proposition that no witness is forced to participate in discovery except through the formal discovery procedures. If a witness refuses to be interviewed or to give a statement, the attorney's only practical recourse is to take the witness' deposition.

*Id.* at 661–63.

In *Brandt I,* the Court was merely focusing on that portion of the *Woytus* opinion in which the *Woytus* court found that the courts will not require plaintiffs to execute medical authorizations expressly authorizing treating physicians to engage in *ex parte* discussions. Nothing in *Brandt I* changes the *Woytus* court's holding that it would "not require that a non-enumerated discovery method be added to those already available under the Rules." *Woytus,* 776 S.W.2d at 395.

Nor do I find anything in *Brandt II* which overrules or abrogates this principle established in *Woytus.* In *Brandt II,* the Court held that "the waiver of the medical privilege ... which occurs in a personal injury or medical malpractice case once there is an issue joined concerning the plaintiff's medical condition, is a waiver of both the testimonial privilege and the physician's fiduciary duty of confidentiality." 856 S.W.2d at 674. According to the *Brandt II* court, "these waivers cover any information bearing on those medical issues," and "[t]he fiduciary duty that the physician owes the patient to maintain in confidence medical information concerning the patient's mental or physical condition does not apply to an ex parte conference that is within the scope of the waivers." *Id.* As was the case in *Brandt I,* nothing in *Brandt II* changes the *Woytus* court's holding that it would "not require that a non-enumerated discovery method be added to those already available under the Rules." *Woytus,* 776 S.W.2d at 395.

In *Brandt I* and *Brandt II,* the Missouri Supreme Court definitely recognized a defendant's right to engage in *ex parte* communication with a plaintiff's physician. Moreover, I recognize that a party may use "informal discovery" to have these *ex parte* communications with a physician. Indeed, "[i]nformal discovery through *ex parte* discussions can serve as a valuable resource for parties to a suit." *Norman,* 872 S.W.2d at 891. Moreover, the *Brandt I* court made it clear that a plaintiff's authorization is not even necessary before a defendant can engage in *ex parte* communications with a plaintiff's physician. But, I find nothing in *Brandt I, Brandt II,* or in the discovery rules which gives the

circuit court the authority to compel a party to sign a medical authorization form during informal discovery.[3]

In regard to medical authorizations, the case law is clear: (1) a circuit court cannot compel a plaintiff to expressly authorize *ex parte* discussions with her physician, *Woytus*, 776 S.W.2d at 395; (2) a physician cannot be forced over his own objection to engage in informal *ex parte* discussions with a defense attorney during discovery, *Brandt I*, 856 S.W.2d at 662; and (3) a circuit court cannot preclude a defense attorney from *ex parte* discussions with a physician by granting the patient the power to prohibit those discussions, *Norman*, 872 S.W.2d at 891. In this case, Judge Roldan did none of these. He merely denied Collins's motion to compel Carli Smith to execute the medical authorization as submitted by Collins.

The circuit court's discretion is limited by the parameters of the discovery rules. *Id.* at 890. I find nothing in the discovery rules which gives the circuit court the authority to compel a party to sign a medical authorization form when informal discovery is involved. Of course, a party may consent to signing a medical authorization form during informal discovery, but the circuit court cannot force a party to do so.

Further, my analysis is consistent with Privacy Rules under HIPPA. HIPPA permits disclosure of protected health information if the patient executes a HIPPA compliant authorization. 45 C.F.R. § 164.508. If a patient does not execute an authorization or expressly consent to the disclosure of protected health information, HIPPA permits disclosure of protected health information in the course of a judicial proceeding under two circumstances: (1) if the provider is ordered to do so by a court, or (2) if the provider discloses in response to traditional methods of formal discovery, i.e. "subpoena, discovery request or other lawful process," as long as certain conditions are met. 45 C.F.R. § 164.512(e)(1)(i)–(ii). The conditions are: (1) the health care provider must be assured that the requesting entity or its representative has provided the patient with written notice and opportunity to object, or (2) that in relation to the information contemplated by the discovery request or subpoena, the requesting entity has moved the court for a "qualified protective order." 45 C.F.R. § 164.512(e)(1)(ii)(A)–(B). In ruling that the circuit court has no authority to compel a party to sign a medical authorization form when informal discovery is involved, my analysis does nothing to disturb the requirements of HIPPA.

I, therefore, would quash our preliminary writ and deny Collins's request for a permanent writ of prohibition because the issue of whether or not the plaintiff in this case must execute a medical authorization form is a matter involving informal discovery and the circuit court does not have the authority to compel a party to sign a medical authorization form when informal discovery is involved.

---

3. Judge Ann Covington seemingly recognized that a problem existed with ex parte communications in matters of informal discovery. She stated in her concurring opinion in Brandt I: "As *Woytus* emphasized, our rules of discovery say nothing about informal discovery by *ex parte* communications between attorneys for the defendant and fact witnesses, including the plaintiff's treating physician." 856 S.W.2d at 666. Indeed, the Missouri Rules of Civil Procedure say nothing about medical authorizations at all.